Saxton and husband vs. Webber and others.

SAXTON and husband, Appellants, vs. WEBBER and others, Respondents.

*November 19 — December 6, 1892.*

*Wills: Independent devises or single scheme? Partial invalidity: Suspension of absolute power of alienation: Descent.*

1. A testator devised all his real estate to his wife for her life, in trust to distribute the income, etc. In a subsequent clause of his will he devised the realty, after the death of his wife, as follows: Certain described lands and an undivided sixth of the residue to his daughter, "her heirs and assigns forever," subject to certain conditions and limitations; an undivided sixth of said residue to each of three sons, and to their respective heirs and assigns forever; another undivided sixth to the persons to whom his wife might convey or devise the same, and to their heirs and assigns forever; and the remaining undivided sixth to a trustee for the use of his youngest son for life, and then to his issue. *Held,* that the devise to each of the three sons first mentioned was independent of the other devises in the same clause, and valid even though such other devises might be void.

2. One of the three sons having died intestate after the father, and prior to the death of the mother, without issue or widow surviving, the

83   617
91   144
83   617
94   609
83   617
103   646
83   617
s108  628
108   629
83         617
s20 LRA 509n
28 LRA   328

real estate so devised to him descended, under subd. 2, sec. 2270, R. S., to his mother, so as to become her absolute property and pass under her will.

3. The devise to the daughter and to her heirs and assigns forever was followed by a provision that in case of her death without issue, the real estate devised to her should "descend" to the, heirs of the testator living at the time of her death, unless her husband should survive her, in which case he should be entitled to the same during his life or until he should marry again, and upon his death or re-marriage it should "descend" to the heirs of the testator living at that time. *Held*, that these conditions annexed to the devise were invalid under secs. 2038, 2039, R. S., as an unlawful suspension of the absolute power of alienation, but that the devise itself was not defeated thereby.

4. The devise to a trustee for the use of testator's youngest son for life provided that upon his decease the trust estate should be conveyed to his issue then living, or if he died without issue it should descend to the heirs of the testator then living. *Held*, that this did not unlawfully suspend the power of alienation and was valid.

APPEAL from the Circuit Court for *Milwaukee* County.

On November 15, 1884, one William A. Webber died at the age of about sixty-six years, domiciled in Milwaukee, leaving him surviving a widow, Mary H., who was at the time about sixty-seven years of age. He and said Mary H. were at the time the parents of five children, to wit, four sons, aged, respectively, as follows: *Albert G.*, forty-three; *William F.*, forty-one; *Wilkie A.*, thirty-three; and *Harry J.*, twenty-six; and also one daughter, *Harriet A.*, twenty-four, who had married the plaintiff *Charles A. Saxton* in September, 1880, but she had never, up to that date, had any child. The said William A. also left him surviving two brothers, each having a child or children living; and a child or children by a deceased sister. At the time of the death of the said William A. Webber he was seised of considerable personal property and real estate, hereinafter described. He left as his last will and testament a paper writing, executed October 16, 1884, and the same was admitted to probate January 17, 1885, in and by which he

appointed his widow, the said Mary H., sole executrix of his will, and she qualified as such January 23, 1885, and thereupon took upon herself the several trusts mentioned in said will.

By said will the testator gave and bequeathed to the said Mary H., her heirs and assigns, all his personal estate, money, rights, credits, and effects, whatever and wherever, subject to the payment of his debts, funeral expenses, and charges of administration. He also gave and devised all his real estate, whatever and wherever, to his said wife, Mary H., for and during the term of her natural life, *but in trust to take care of,* manage, and to receive the rents, issues, and profits thereof, *and to pay and distribute the net income therefrom quarter-yearly* as follows: To the said *Harriet A. Saxton, the entire net income* from the north thirty-five feet of lot 5 in block 90, and the north half of lot 5 in block 88, in the Seventh ward of the city of Milwaukee; and lot 16 in Hubbard's subdivision of the N. W. ¼ of section 9, town 7, range 22, in the county of Milwaukee, and also *one sixth of the net income* from all the rest of his real estate; and to his said wife, Mary H., and his said sons, *Albert G., William F., Wilkie A.,* and *Henry J.,* the remaining *five sixths* of the *net income* from the same, equally,— that is to say, *one sixth* of such income *to each* of them. Said will also contained, as the third clause thereof, the following provisions, to wit:

" *Third,* I give and devise all my real estate, whatever and wherever, from and after the decease of my said wife, as follows, to wit: To my said daughter, *Harriet A. Saxton,* her heirs and assigns forever, I give and devise, as aforesaid, the said north thirty-five feet of said lot 5 in block 90, and the said north half of lot 5 in block 88, in the Seventh ward of said city of Milwaukee; and said lot 16 in Hubbard's subdivision of the northwest quarter of section 9, town 7, range 22; and the undivided sixth part of all the

rest and residue of my real estate, whatever and wherever; but, in case of her decease without issue, then and in that case all the real estate so devised to her is to descend to my heirs at law living at the time of her decease, unless her said husband shall survive her, in which case he shall be entitled to the same for and during the term of his natural life in case he shall not marry again, and upon his decease or marriage the same shall descend to my heirs at law living at the time of his decease or marriage. To each of my sons *Albert G. Webber*, William F. Webber, and *Wilkie A. Webber*, his heirs and assigns forever, I give and devise, as aforesaid, the one undivided sixth part of the rest and residue of all my real estate, whatever and wherever, one undivided sixth part of which is given to my daughter, as aforesaid. To such person or persons as my said wife may convey or devise the same to, his or their heirs and assigns forever, I give and devise, as aforesaid, the one undivided sixth part of the said rest and residue of my said real estate. And to such person or persons as the county court or court or judge having probate jurisdiction in the county of Milwaukee may appoint trustee of the same I hereby give and devise, as aforesaid, the remaining one undivided sixth part of the said rest and residue of my said real estate, in trust, nevertheless, to take care of and manage, and to receive the rents, issues, and profits thereof, for and during the term of the natural life of my son *Harry J. Webber*, and to pay the net income therefrom to my said son *Harry J. Webber* quarter-yearly for and during the term of his natural life, and upon his decease to convey the said trust estate to his issue then living in fee, or, in case he shall die without issue, then and in that case the same to descend to my heirs at law then living in fee."

On February 6, 1886, the said executrix had paid the debts and expenses of settling said estate, and the county court, by its final order or judgment bearing date on that

day, assigned and set over the residue of the property belonging to said estate according to the terms of said will; that is to say, the *personal property* to the widow (the said executrix) *absolutely*, and all of said real estate *undivided* to the said Mary H. *for her natural life, upon the trusts* mentioned in said will. On February 8, 1886, *letters of trust* were issued to the said Mary H. by the said county court, and she thereupon took possession and charge of the residue of said property, including the premises mentioned, and held and managed the same, receiving the rents, issues, and profits thereof, and, after paying the expenses of the trust, divided, distributed, and paid over the balance and remainder of said income, rents, issues, and profits, from time to time, to the parties entitled thereto, in the proportions directed by said will.

On August 25, 1886, the said son William F., who never had any child, and was never married, domiciled in Milwaukee, died intestate. On January 15, 1890, the said Mary H. died, domiciled in Milwaukee, leaving a will, executed January 17, 1889, and which will was duly admitted to probate May 1, 1890. After giving certain bequests to certain collateral kindred, the said Mary H. gave to the said *Harriet A.* in and by said will $1,000 and certain household furniture, and the balance of her property she therein divided equally among her three sons *Albert G., Wilkie A.,* and *Harry J.,*— to the latter with a certain proviso.

On May 14, 1890, this action was commenced by the said *Harriet A.* and her husband for a partition of said real estate, and for a construction of the will of the said William A. Webber; and the complaint alleged, in effect, the facts stated. *Albert G.* and wife and *Wilkie A.* and wife answered, and in effect admitted all the allegations of the complaint. The said *Harry J.* and wife and guardian answered at length.

Upon the trial the court found as matters of fact, in ef-

fect, the facts stated; and as conclusions of law the court found, in effect: (1) That the said *Albert G., Wilkie A., Henry J.,* and *Harriet A.* are tenants in common of the premises above and in said complaint described. (2) That the said *Harriet A.* is not entitled to the ownership *in fee simple* of all the real property in and by said will of her father devised to her conditionally. (3) That the third clause of the will of said William A. (copied in full above) is *illegal and void as to the estate* therein devised *to the said Harriet A.,* because in violation of the statute against perpetuities, and because *the whole third clause* of the will constitutes *a single scheme* for the disposition of the real estate of the testator after the death of his widow; that *the whole of said third clause is invalid,* and the land affected by it or mentioned in that clause — that is to say, *all the real estate* of which the testator died seised — *must descend* and go to the heirs at law, the same as if no will had been made. (4) That the first and second clauses of the will are legal, valid, and effectual, and had in fact been executed, and that the assignment of the estate made by the court of probate must stand. (5) That the one-fifth share or interest in said real estate, which, under the decision last herein above made in paragraph 4, vested in the said William F. Webber, upon his death intestate, unmarried, and without leaving issue, descended to and was inherited by his mother, the said Mary H., and the same undivided one-fifth part was devised by the said Mary H. by her said will, and was thereby passed to, and is now vested in, the said defendants *Albert G., Wilkie A.,* and *Henry J.,* in equal shares or proportions, as follows: To *Albert G.,* one third part thereof in fee simple; to *Wilkie A.,* one third part thereof in fee simple; to *Henry J.,* one equal third part thereof, subject to the proviso contained in the fifth clause of the will of the said Mary H., to wit, *Henry J.,* being incapable, shall only receive the interest of his share during

his life, and his wife, *Annie*, to receive one third of his share if she survives him. From the judgment entered upon such findings, the plaintiffs appeal.

*David S. Ordway*, for the appellants.

For the respondents *Harry J. Webber*, *Annie Webber*, and *Horace N. Campbell*, as guardian of *Harry J. Webber*, there was a brief by *Shepard*, *Haring & Frost* and *Henry L. Buxton*, attorneys, and *Edward W. Frost*, of counsel; and the cause was argued orally by *Mr. Frost*.

CASSODAY, J. The testator, William A. Webber, by his last will and testament, after disposing of his personal estate, devised *all his real estate* to his wife, Mary H., for and during her natural life, *in trust* to take care of and manage the same, and to receive the rents, issues, and profits thereof, and to pay and distribute the *net income* therefrom, as therein prescribed. The real estate so devised in trust consisted of two classes,— one of which was made up of three several pieces of land, therein specifically described; and the other class was made up of all the residue of his real estate, and not therein specifically described. By the third clause of the will, quoted in the foregoing statement, he devised, after the death of his said wife, all his real estate as follows, to wit: To his daughter, *Harriet A.*, "her heirs and assigns forever," the three several pieces so specifically described, and an undivided one-sixth of the lands not so specifically described, subject, however, to the conditions and limitations therein named; the undivided one-sixth of the lands not so specifically described to *each* of his three sons *Albert G.*, William F., and *Wilkie A.*, and to their respective heirs and assigns forever; the undivided one-sixth of the lands not so specifically described to such person or persons as his said wife, Mary H., might "convey or devise the same to, his or their heirs and assigns forever;" and the remaining undivided one-sixth of the lands not so

specifically described to a trustee, to be appointed as therein designated, for the use of said *Harry J.* for life, and then to his issue, upon the conditions therein named. The trial court adjudged each of the said six several devises contained in the third clause of the will to be entirely void, on the ground that they altogether constituted "a single scheme for the disposition" of the testator's real estate after the death of his widow, and that at least one of said dispositions is void. We are unable to perceive any valid reason for sustaining such judgment.

1. "Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent while the person to whom or the event upon which they are limited to take effect remains uncertain." Sec. 2037, R. S. Under this section it is very obvious that at least the devises to *Albert G.*, William F., and *Wilkie A.*, respectively, were each vested immediately upon the death of the testator, since each was then entitled to the "immediate right to the possession of the lands" so devised to him, "upon the ceasing of the intermediate or precedent estate" so devised in trust to the widow. It is true that the statute, which declares, in effect, that all devises of land made to two or more persons shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy (sec. 2068), does not apply to devises made in trust (sec. 2069), but this exception only seems to be applicable where the devises so made in trust are of the same estates so devised to two or more persons *in solido* or in common. Assuming for the present that this exception is applicable to the several devises to *Harriet A.* and her heirs and assigns, to *Harry J.* and his issue, and to such person or persons as the widow should designate by conveyance or devise, yet it can have

Saxton and husband vs. Webber and others.

no application to the several devises to *Albert G.*, William F., and *Wilkie A.*, since they each took a vested fee of such devises, respectively, immediately upon the death of the testator, subject only to the extinguishment of such life estate so vested in the widow. *Dana v. Murray*, 122 N. Y. 614; *Scott v. West*, 63 Wis. 583, 584, and cases there cited. Besides, the statute expressly declares that "estates, in respect to the number and connection of their owners, are divided into estates *in severalty*, in joint tenancy, and in common" (sec. 2067); and, since *Albert G.*, William F., and *Wilkie A.* each took one undivided sixth part of the fee, subject to the extinguishment of the life estate, it is manifest that each took in severalty, and hence such devise to each of them must be regarded as entirely independent of the other devises mentioned, and of each other. *Everitt v. Everitt*, 29 N. Y. 39; *Monarque v. Monarque*, 80 N. Y. 324; *Wells v. Wells*, 88 N. Y. 332; *In re Verplanck*, 91 N. Y. 439; *Purdy v. Hayt*, 92 N. Y. 447; *Tiers v. Tiers*, 98 N. Y. 572. So regarded, we must hold the devises to *Albert G.*, William F., and *Wilkie A.*, respectively, to be valid, whatever may be our conclusions respecting the other provisions of such third clause of the will.

2. William F. died intestate, August 25, 1886, being after the death of his father and prior to the death of his mother, and, as he left no issue or widow him surviving, the land so vested in him necessarily descended to and became the absolute property of his mother. Subd. 2, sec. 2270, R. S. This being so, the same passed by her will to her three sons *Albert G.*, *Wilkie A.*, and *Harry J.*, upon the conditions and limitations and subject to the proviso therein contained.

3. By the third clause of his will the testator, after the decease of his wife, also devised the undivided one-sixth part of his real estate, not therein specifically described, to such person or persons as his said wife might designate by

deed or will, and "to his or their heirs and assigns forever." That also passed by her will to her three sons *Albert G.*, *Wilkie A.*, and *Harry J.* upon the conditions and limitations and subject to the proviso therein contained.

4. This brings us to the question of the validity of the devise to the daughter, *Harriet A.* By the third clause of the will the testator, after the death of his wife, gave and devised to his "said daughter, *Harriet A. Saxton, her heirs and assigns forever*," the lands therein described, followed by this clause: "But in case of her *decease without issue*, then and in that case all the real estate so devised to her *is to descend to my heirs at law living at the time of her decease*, unless her said husband shall survive her, in which case he shall be entitled to the same for and during the term of his natural life, in case he shall not marry again, and upon his decease or marriage the same shall *descend to my heirs at law living at the time of his* decease *or* marriage." This devise was, of course, subject to the life estate in the widow, and upon the death of the testator it immediately became vested in the said *Harriet A.* (sec. 2037, R. S.) as a future estate limited to *commence in possession* on the determination, by lapse of time, of the precedent estate, created at the same time in the widow. Sec. 2034, R. S. The mere fact that *Harriet A.* might have died prior to her mother did not prevent such estate from vesting in her immediately upon the death of her father. *Scott v. West*, 63 Wis. 571; *Webster v. Morris*, 66 Wis. 383; *Baker v. McLeod's Estate*, 79 Wis. 541. Such an estate is not only a freehold, but "may be termed a remainder." Secs. 2029, 2035, R. S.

"Estates in lands are divided into estates of *inheritance*, estates for life, estates for years, and estates at will and by sufferance." Sec. 2025, R. S. It will be observed that the devise to *Harriet A.* is not in terms for life, nor for years, nor at will, nor by sufferance, but is to her, "her heirs and

assigns forever," and hence, under the section last quoted, it must be regarded as an estate of inheritance, subject to the conditions named in the will. " Every estate of inheritance shall continue to be termed a fee simple or fee, and every such estate, when not defeasible or conditional, shall be a fee simple absolute, or an absolute fee." Sec. 2026, R. S. Here it is contended that the estate so devised to the daughter, " her heirs and assigns forever," is defeasible or conditional. The conditions annexed to such devise are to the effect (1) that, in case the said daughter should survive her husband, and die " without issue, then and in that case all the real estate so devised to her " was " *to descend* " to such of the " heirs at law " of the testator as should be " *living at the time of her decease;* " (2) that, in case she died without issue and her husband survived her, then he should be entitled to said real estate " for and during the term of his natural life," and " upon his decease " the same was to " *descend* " to such of the " heirs at law " of the testator as should be " living at the time of his [the husband's] decease; " (3) but that, in case she should die without issue, and her husband should survive her, and should marry again, then he should only be entitled to said real estate up to the time of such remarriage, and upon such remarriage the same was to " *descend* " to such of the " heirs at law " of the testator as should be " living at the time of his " said remarriage. Such " heirs at law " of the testator as should be living at the time of the daughter's death might be entirely different persons from such heirs as should be living at the time of her husband's remarriage, and such heirs of the testator as should then be living might be entirely different persons from those living at the time of the husband's death. Besides, by the express terms of such conditions, such heirs of the testator as should be living at either of the three dates named were to take the lands so devised to the daughter, " her heirs and assigns forever,"

by *descent;* that is to say, in the language of the condition, the same was "*to descend to*" such "heirs at law." The will nowhere undertakes to state from whom such lands are thus "*to descend.*" They could not descend from the testator, for two reasons. One is that, if they descended from him at all, they would go to his heirs at law living at the time of *his death,* and not such other persons as might be regarded as his heirs at some subsequent and indefinite period,— assuming that such a thing is possible; and the other reason is that by his will the testator undertook to dispose of all his property. There is no presumption of an intent to die intestate as to any part of the estate to be indulged. On the contrary, whenever the words of a will, fairly construed, are such as to carry the whole estate, it will be presumed that the testator intended to dispose of all his property. *Given v. Hilton,* 95 U. S. 591; *Raudenbach's Appeal,* 87 Pa. St. 51; *Ferry's Appeal,* 102 Pa. St. 207; *Miller's Appeal,* 113 Pa. St. 459. Among the manifest purposes of the testator, in case his daughter should die without issue, was to prevent the fee of such real estate from becoming vested in her husband, and to have the same return to certain of his own heirs at law, as mentioned. Under the presumption indicated, it is very obvious that the testator intended by his will to vest the title to such real estate in the daughter, "her heirs and assigns forever," and then by the conditions thus annexed to such devise, in case she should die without issue, to control the *descent* from her, to the extent that the remainder should, in that event, return to his heirs at law, as indicated, instead of attempting to secure the same purpose directly by way of executory devise, or defeasance by way of forfeiture, or otherwise. It may be questionable whether a lawful condition can in that way be annexed to such a devise; but, assuming that it may, yet it is manifest, and is in fact conceded, that the several conditions so

annexed to the devise are each and all repugnant to secs. 2038, 2039, R. S., as they stood at the time the estate was created by the death of the testator. Those sections, as they then stood, prohibited and rendered void in their creation every limitation or condition whatever whereby the absolute power of alienation of any future estate should be suspended for a longer period than during the continuance of two lives in being at the creation of the estate, with certain exceptions not material here. *Ford v. Ford,* 70 Wis. 61. It was there said: "We have no authority to speculate upon the chances. The rule is universal that such suspension of power of alienation must necessarily terminate, *under any and all circumstances,* within the period prescribed by the statute, or the disposition will be void." Here the testator attempted by the conditions annexed to the devise to suspend the "*absolute* power of alienation" for a longer period than during the continuance of the lives of his wife and daughter, and hence such conditions are necessarily void and of no effect.

The question recurs, upon the assumption suggested, whether the devise itself is destroyed by reason of the annexation of such unlawful conditions. The statute provides that "successive estates for life shall not be limited unless to persons in being at the creation thereof; and when a remainder shall be limited on more than two successive estates for life *all the life estates subsequent* to those of the *two persons first* entitled thereto *shall be void,* and upon the death of those persons the *remainder* shall take effect in the same manner *as if no other life estate* had been created. Sec. 2041, R. S. This section was borrowed from New York, where it has been held that it "refers only to vested, not to contingent, remainders, and executes the remainders in possession only in favor of such ascertained persons as, *except for the void life estate,* would, under the will or deed, be entitled to the immediate possession." *Purdy v. Hayt,*

92 N. Y. 446. Here the will undertook to create a future life estate in the son-in-law on the death of the daughter, which would be a nullity under the last section, even if the will had only attempted to create in the daughter a mere life estate; and in that event such life estate, as well as the life estate to the widow, would be preserved by the same section. But here the case is very much more favorable to the daughter, since, as already indicated, instead of a mere life estate in the daughter, the devise is to her, " her heirs and assigns forever," with the unlawful conditions annexed. There is, therefore, much stronger reason for holding that such unlawful conditions should not operate as a defeasance of the title thus vested in the daughter. Thus it has repeatedly been held in Massachusetts that "a devise, subject to a conditional limitation void for remoteness, vests an absolute estate in the first taker." *Proprietors v. Grant*, 3 Gray, 142; *Theological Ed. Soc. v. Att'y Gen.* 135 Mass. 285. The same rule has been sanctioned in New York. *Manice v. Manice*, 43 N. Y. 383; *Tiers v. Tiers*, 98 N. Y. 568; *Dana v. Murray*, 122 N. Y. 604. See, also, *Outland v. Bowen*, 115 Ind. 150; *Coggins' Appeal*, 124 Pa. St. 10. This court has, in effect, held the same thing. *Scott v. West*, 63 Wis. 529, 582. We must hold that the devise to the daughter, " her heirs and assigns forever," vested the title in her, and that the unlawful conditions annexed thereto did not and cannot operate as a defeasance.

5. The devise of the one undivided sixth part of the lands not specifically described to such person or persons as the county court might appoint, in trust to take care of and manage and to receive the rents, issues, and profits thereof, for and during the life of *Harry J.*, and to pay the net income therefrom to him quarter-yearly during his life, and upon his decease to convey the same to his issue then living, in fee; or, in case he shall die without issue, then and in that case the same to descend to such of the heirs at law

Hansen vs. The Chicago, Milwaukee & St. Paul R. Co.

of the testator in fee as shall then be living,— only ties up said estate so devised in trust during the life of said *Harry J.;* and hence is not repugnant to the statutes cited, but is a valid trust. It follows that the plaintiffs can claim nothing by virtue of the peculiar provisions of that devise in this action for partition. The same may be said respecting the proviso annexed to the devise to the said *Harry J.* in the will of the widow, Mary H.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion, and for further proceedings according to law.