Tyson vs. Tyson and another.

Tyson, Respondent, vs. Tyson and another, imp., Appellants.

*March 20 — April 30, 1897.*

*Deeds: Passive trust: Perpetuities: Contingent remainder: Alternative estates.*

1. A deed purporting to convey to trustees the legal title to land, to hold such title and thereafter to make conveyances thereof upon various contingencies specified, created a passive or dry trust, and not an express trust as defined and authorized by sec. 2081, S. & B. Ann. Stats.; and hence, under secs. 2073, 2075, such deed will be treated as if the grants were in direct terms to the beneficiaries.

2. A deed reserving a life estate in the grantor, and granting a life estate thereafter to his daughter then living, with contingent remainder to the heirs of her body yet to be born (or such of them as she should appoint by will), did not suspend the absolute power of alienation for a longer period than during the continuance of two lives in being at the creation of the estate, within the meaning of sec. 2039, R. S., since the estate of the heirs of the body of the daughter must vest in possession, if at all, at the close of her life.

3. A further provision of the deed, attempting to grant estates to take effect in the event of the failure of issue in the daughter, did not, even if void, affect the validity of the contingent remainder to her children.

Appeal from a judgment of the circuit court for Milwaukee county: D. H. Johnson, Circuit Judge. *Reversed.*

The case is thus fairly stated in the appellants' brief:

This is an action to remove a cloud upon the title of certain

Tyson vs. Tyson and another.

real estate, by annulling a trust deed and a will, in certain particulars, and having them declared void as being in violation of the statutes against unlawful suspension of the power of alienation.

Prior to the 19th day of November, 1874, Robert H. Cabell, of Baltimore, Md., owned fifteen lots in the city of Milwaukee. On said 19th day of November said R. H. Cabell and Catharine, his wife, made and executed a trust deed of said lands to I. A. Lapham and George G. Houghton, both of the city of Milwaukee, reciting that they (the Cabells) had an only child, *Virginia Catharine Cabell*, then in her fourteenth year, and were anxious to convey said lands by absolute title, free from claim of dower, to trustees, for the uses and purposes therein set out, and conveying the same to said Lapham and Houghton, trustees, their successors or assigns, upon the trust and purpose: (1) That they should hold the same for the use of grantor R. H. Cabell during his life, and permit him to use, occupy, and enjoy the same, to take, receive, and enjoy the rents, issues, and profits thereof during his life, with power to lease the same and give acquittances for the rents thereof without the same passing through the trustees; the said R. H. Cabell reserving to himself a life estate in said lands, and the rents, issues, and profits thereof, as fully as if said deed had never been made. (2) That trustees should hold said lands at the death of said Cabell to and for the sole use and benefit of his said only child, *Virginia Catharine*, if she should survive him, during her life, to be freed and discharged from, and in no manner to be subject to, the debts, contracts, control, or marital rights of any husband she might take, but as her sole, separate, and exclusive estate during her life, and trustees should permit her to use, occupy, and enjoy the same, to take the rents, issues, and profits thereof as her sole, separate, and exclusive estate, with power in her (or in her guardian during minority or until marriage) to lease the same and give acquittances for rents, without the same passing through said trustees, during her life.

Herein said *Virginia Catharine* was granted power and authority, after reaching twenty-one years of age, and while she should be married or a widow, to devise, appoint, and distribute said lands, or any part thereof, in fee simple, by her last will, in such manner or proportions as she might think proper, between her children, if any, living at her death, and the lawful issue of any children of hers who might die in her lifetime leaving such issue; and she might allot the whole of said lands to any one or more such persons to the exclusion of the others, with which power and right of selection she was expressly invested and intrusted, and the execution whereof was to depend upon her own free will and option; and in the event that she should die, leaving a will in the execution of such power, the trustees should surrender and convey said lands, or such part thereof as she should so appoint, to such of her children living at her death, or the lawful issue of any child of hers that might have died in her lifetime leaving such issue, as she might by her will have selected or appointed, and in such manner or proportions as she might thereby direct or appoint.

But (3) if *Virginia Catharine* should die without leaving a will in the execution of said power, the trustees should convey said lands in fee simple equally to the children of said *Virginia Catharine* living at her death, and the issues of any child of hers that may have died in her lifetime leaving issue. such issue taking according to the right of representation.

If (4) *Virginia Catharine* should die without leaving any child living at her death, or the issue of any child of hers that might have died in her lifetime, trustees should hold the said lands for the use of Catharine Cabell, her mother, during her life, and at the death of Catharine convey the same in fee simple to such persons as should then be the heirs at law of said R. H. Cabell according to the laws of the state of Wisconsin.

If (5) *Virginia Catharine* should die without leaving any child living at her death, or the issue of any child of hers that may have died in her lifetime leaving issue, and if Catharine Cabell, her mother, should not survive her, trustees should convey said lands to such persons or person as should at the death of said *Virginia Catharine* be the heirs at law of said R. H. Cabell, according to the laws of. Wisconsin.

If, (6) at the death of said R. H. Cabell, *Virginia Catharine* should not be living, trustees should convey the lands to her children, if any should be living at her death, and the issue of any child of hers that might have died in her lifetime leaving issue, such issue taking by representation.

If (7) *Virginia Catharine* should then have died without leaving child or issue, trustees should hold for Catharine Cabell during her life, and at her death convey to such persons as should then be heirs at law of said Cabell according to the laws of Wisconsin.

If (8) at R. H. Cabell's death Catharine Cabell should also be dead, trustees should convey to such persons as should at his death be his heirs according to the laws of Wisconsin.

It was provided further in and by said trust deed that the trustees should have no power to sell, lease, incumber, or dispose of said lands, or the rents, issues, or profits thereof, and that it was intended solely to convey the lands to them for the purposes set out, and no other, and they should hold the same for the benefit of the persons mentioned, and convey to such persons, as aforesaid.

This trust deed was by said R. H. Cabell caused to be recorded in the register of deeds' office in Milwaukee county on November 25, 1874; and said Lapham and Houghton consented to accept the trusts therein, but never entered on the performance thereof, or into the possession of the property. Said R. H. Cabell died at Baltimore about the 20th day of February, 1875, leaving surviving him his wife, Catharine, and his only child, *Virginia Catharine*, and leaving a

will, the second paragraph whereof runs as follows: "2nd. Having conveyed to I. A. Lapham and George G. Houghton, of Milwaukee, as trustees, certain lots of land in that city, fifteen in number, by a deed in my lifetime, in which my wife united, dated on November 19, 1874, and to be recorded in said city, in which said deed the said fifteen lots, all of them and each of them, are fully described, I do hereby refer to said deed for the purpose of ratifying and confirming the same, if necessary, and of further declaiming that it is my wish and desire that the said fifteen lots of land therein described should at my death pass to such persons, and on such uses, trusts, and limitations as are in said deed expressed, and none other; and if this shall, by any possibility, have not already happened and been acomplished by virtue of said deed before my death, it is my will and intention that it may and shall be brought to pass by this my will." All the rest and residue of his property, beyond the fifteen lots above mentioned, and excepting the property owned by his wife, the testator devised in fee to his wife and child equally, share and share alike.

The will was admitted to probate by the county court of Milwaukee county. Catharine Cabell, wife of testator, was appointed guardian, under the will, of *Virginia Catharine*, and possessed and controlled the lands in suit until *Virginia Catharine* became twenty-one years of age in 1882, since which time she has been in possession and control thereof. About 1883 *Virginia Catharine* was married to B. H. Tyson, and she has two children, *Virginia Cabell Tyson*, aged nine years in October, 1893, and *Juliet Catharine Tyson*, aged eight years in March, 1894. *Virginia Catharine* brings this action to annul said trust deed and will as far as they undertake to dispose of said lands beyond her own life, and to have the court declare that said R. H. Cabell, beyond providing by said trust deed and will for life estates in himself and in his daughter, the plaintiff, died intestate; that said

trust deed and will are, subject only to said life estates in grantor and in his daughter, void, as in violation of the statutes of this state prohibiting suspension of the power of alienation of real estate, and, since said R. H. Cabell died intestate as to the disposition of said lands beyond the life of his daughter, the same descend to her, as his heir at law. Her infant children aforesaid, *Virginia Cabell Tyson* and *Juliet Catharine Tyson*, plaintiff makes defendants, as well as George G. Houghton, one of the trustees; the other, I. A. Lapham, having died.

Such is a statement of the facts found by the circuit court, and about which there is no dispute.

It was further alleged by plaintiff, but not found by the court, that on the 8th day of January, 1894, Catharine Cabell executed and delivered to plaintiff a quitclaim deed of all her right, title, and interest in and to said lands, and that in the matter of the will of R. H. Cabell the county court, by its final order and decree, made and entered on May 13, 1875, ordered that all the property and estate of R. H. Cabell whatsoever, in the state of Wisconsin, be assigned to Catharine Cabell and *Virginia Catharine* equally, share and share alike.

As conclusions of law the circuit court determined, *first*, that no estate, right, title, or interest whatsoever was created in said trustees, Houghton and Lapham, or either of them, by said deed, but that the rights and interests sustained by the conclusions of law as valid grants passed directly to the beneficiaries thereof, and said deed was, as far as it undertook to create any estate in said trustees, null and void; *second*, that said deed was valid and effectual to, and did, create and reserve in said R. H. Cabell an estate for life in said lands; *third*, that in and by said deed R. H. Cabell created a valid and effectual life estate in his daughter, *Virginia Catharine*, the plaintiff, and said deed was valid and binding for that purpose; *fourth*, that all the provisions

and conditions of said deed whereby an estate in remainder was sought to be created in the surviving children of *Virginia Catharine*, or in such of them as she might appoint by her last will, are void, because of the unlawful suspension of the power of alienation sought to be effected through said remainder and the conditional remainder thereafter; *fifth* and *sixth*, that all parts and clauses of the said deed (and the will, as far as it attempted to ratify and confirm the same) whereby estates were attempted to be created, and the course of the property directed, beyond the life of *Virginia Catharine*, were in violation of the statutes of Wisconsin against perpetuities, and void, as in violation of the provisions of secs. 14, 15, ch. 83, R. S. of 1858 of Wisconsin; and *seventh*, that on the death of R. H. Cabell the entire estate in said lands descended as intestate property to the plaintiff, *Virginia Catharine*, the only child of said R. H. Cabell, and she was entitled to judgment establishing her title in fee to said lands, and to have said deed and will, as far as they conflicted therewith, set aside as a cloud upon her title. Judgment was entered in accordance therewith, and the defendant infants appealed.

For the appellants there was a brief by *H. P. Richardson*, guardian *ad litem*, and *J. G. Flanders*, of counsel, and supplemental briefs and oral argument by *Mr. Richardson*. They argued, among other things, that the grantor, his daughter, and his wife were all in being at the creation of the estate. At the end of the two lives of the grantor and his daughter her issue will take in possession if ever. This satisfies the statute. *Ford v. Ford*, 70 Wis. 19, 61; *Scott v. West*, 63 id. 529, 595; *Saxton v. Webber*, 83 id. 617, 629; *Montignani v. Blade*, 145 N. Y. 111, 120, 121; *Schermerhorn v. Cotting*, 131 id. 48; *Henderson v. Henderson*, 113 id. 1; Chaplin, Suspension of Power of Alienation, §§ 90, 91, 122, 123; *Kelso v. Lorillard*, 85 N. Y. 177; *Wilson v. White*, 109 id. 59, 61. There is no limit to the number of contingencies if the

remainder vests at the end of two lives. Chaplin, Suspension of Power of Alienation, § 343, and cases cited. Valid alternative estates are not affected by void alternative estates. Chaplin, Suspension of Power of Alienation, § 483; *Schettler v. Smith*, 41 N. Y. 328, 336, 345, 346; *Webster v. Morris*, 66 Wis. 366, 393, 394; *Jackson v. Phillips*, 14 Allen, 539, 572; *Perkins v. Fisher*, 59 Fed. Rep. 801; *Armstrong v. Armstrong*, 14 B. Mon. 333, 346; *Evers v. Challis*, 7 H. L. Cas. 531, 555; 2 Washb. Real Prop. (5th ed.), 761, 778; Perry, Trusts, § 381; 1 Jarman, Wills (6th ed.), 283, 287; *Ackerman's Adm'r v. Vreeland's Ex'r*, 14 N. J. Eq. 23, 26; *Monypenny v. Dering*, 2 De Gex, M. & G. 145; *In re Ewen*, 7 Misc. (N. Y.), §§ 619, 624; *Minter v. Wraith*, 13 Sim. 52, 62; Lewis, Perpetuities, 501; *Fowler v. Depau*, 26 Barb. 224, 237, 238; *Robinson v. Fowler Orphan Asylum*, 123 U. S. 703; *Seaver v. Fitzgerald*, 141 Mass. 401; *Fowler v. Ingersoll*, 127 N. Y. 472.

For the respondent there were separate briefs by *Quarles, Spence & Quarles*, attorneys, and *Edw. S. Bragg*, of counsel, and oral argument by *T. W. Spence*.

WINSLOW, J. The deed of November 19, 1874, purported to convey to Lapham and Houghton the legal title of the property in question in trust to hold such title and thereafter make conveyance thereof upon various contingencies as directed in the body of the instrument. The supposed trust was a passive or dry trust only,— a mere holding of the naked legal title. It was not an express trust, as defined and authorized by sec. 2081, S. & B. Ann. Stats., and hence it was one of the trusts abolished by the terms of sec. 2071 of the same statutes. So far, however, as the grants in the deed would have been valid if they had been made direct to the beneficiaries, so far the law executes the attempted trusts, and passes legal estates to the beneficiaries " of the same quality and duration, and subject to the same

conditions," as their beneficial interests. S. & B. Ann. Stats. secs. 2073, 2075. The deed is therefore to be treated as if no trustees were named, and as if the grants were in direct terms to the beneficiaries. The plaintiff's contention is that the contingent remainder attempted to be granted to the surviving children or issue of deceased children of *Virginia* or such of them as *Virginia* may appoint by will is void, and that her title should be freed from the apparent cloud created thereby. This is the only question presented in the case, and the only one we shall consider.

The trust deed reserved a life estate in Robert H. Cabell; then granted a life estate to *Virginia*, his daughter, who was then, and is now, in being; and then attempted to grant a contingent remainder to the heirs of the body of *Virginia* yet to be born or such of them as she should appoint by will. Here were evidently two life estates granted to persons in being at the creation of the estates, and a contingent remainder to persons not then in being. There were further provisions (in the event of failure of issue in *Virginia*) attempting to grant a third life estate to the grantor's wife, and an estate in fee thereafter in the then heirs of the grantor, but these provisions we find it unnecessary to consider. Whether these provisions were void or not, or whether the third life estate would drop out and the estate in fee move up and take its place, are questions which it may become necessary to decide at some time; but they are not now presented, nor can it now be told who are the parties interested in their determination. It may be conceded that these latter alternatives are all void, and yet the limitation to the children of *Virginia* may be valid. *Schettler v. Smith*, 41 N. Y. 328. The contingent remainder in *Virginia's* children precedes all these estates, and, if it is valid, then the plaintiff cannot recover. We think it valid. At the time of the execution of the trust deed the absolute power of alienation could not be suspended for a longer period than

during the continuance of two lives in being at the creation of the estate. R. S. 1878, sec. 2039. Every future estate which suspended the absolute power of alienation for a longer period than this was void in its creation. R. S. sec. 2038. The principle is that, in order to make the future estate valid, the suspension of the power of alienation must under all circumstances terminate at or before the termination of the second life. It is not sufficient that it may so happen. It must so happen in every possible contingency. The absolute power of alienation may be in suspense, and the person in whom the estate is to vest may be undetermined during the two lives in being, if at the close of that period the suspension must absolutely terminate. This requirement is met in the case before us. The estate of the heirs of the body of *Virginia* must vest in possession, if it vests at all, at the close of *Virginia's* life, or, in other words, at the termination of the second life in being at the creation of the estate. *Schettler v. Smith, supra; Ford v. Ford,* 70 Wis. 19–61. This satisfies the statute.

The sum and substance of the matter is this: The remainder limited to the children of *Virginia,* or such of them as she should appoint by will, is a valid contingent remainder at common law. It falls in the fourth class of contingent remainders, as defined by Mr. Fearne, namely, "Where a remainder is limited to a person not ascertained, *or not in being,* at the time when such limitation is made." Fearne, Remainders, 9. The statute which limits the time during which the power of alienation may be suspended does not affect the remainder here, because the time of suspension is limited by the grant itself to the duration of two lives in being. We are referred to no other statute which can be held to invalidate the remainder. It follows necessarily that the complaint should have been dismissed.

· *By the Court.—* Judgment reversed, and action remanded with directions to dismiss the complaint.

A motion for an order that the costs of all parties herein in this court and in the court below be paid out of the property and estate in the custody of the court was denied June 11, 1897.