WEBBER, Appellant, vs. WEBBER and others, Respondents.

*December 13, 1900 — January 8, 1901.*

*Wills: Construction: Devise in trust: Validity: Suspension of power of alienation: Estates tail: Seisin.*

Land was devised to trustees to receive the rents, issues, and profits thereof during the life of testator's son, and to pay the net income to said son during his life, and upon his death to convey the land "to his *issue then living* in fee, or, in case he shall die *without issue,* then in that case the same to descend to" the testator's heirs at law then living. The son had but one child, which died before his death. After his death his widow claimed the land. *Held:*

(1) The words "issue then living," and also the words following, "without issue," meant issue living at the time of the son's death.

(2) The trust so created was not a mere passive or dry trust such as had been abolished by statute (secs. 2073–2075, Stats. 1898). It did not entitle the son to the "actual possession of the lands and the receipt of the rents and profits thereof," as provided in sec. 2073; nor was it intended thereby to vest in him "the right to the possession and profits," as provided in sec. 2075.

(3) The trust was one expressly authorized by sec. 2081, Stats. 1898. It did not suspend the absolute power of alienation for a longer time than during the life of the son, and therefore was not repugnant to sec. 2039, R. S. 1878.

(4) The devise did not create an estate tail in the son, and it cannot therefore be adjudged, under sec. 2027, Stats. 1898, that he was seised thereof as an allodium.

(5) The son never having been seised of the land devised, it did not pass from him to his widow.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

*N. S. Murphey,* for the appellant.

*David S. Ordway,* for the respondents.

CASSODAY, C. J.    This is an appeal from a judgment of the circuit court affirming a judgment of the county court construing a portion of the will of William A. Webber, deceased,

and distributing certain property held in trust under the third subdivision of that will.

It appears from the record, and is undisputed, that the will was executed October 16, 1884; that William A. Webber died November 15, 1884, leaving such will, which was duly admitted to probate, and also leaving, him surviving, his widow, Mary H., and five children, *Albert G.*, William F., Wilkie A., Harry J., and *Harriet A.;* that William F. never married, but died intestate August 25, 1888, and his portion of such estate and all his property descended to his mother, Mary H. Webber; that January 17, 1889, Mary H. executed her will; that January 15, 1890, Mary H. died testate, and her will was admitted to probate soon after; that the son Harry J. was married to the appellant herein, *Annie Webber*, June 11, 1883, more than a year before the execution of the will in question; that as the fruit of that marriage a child, Blanche Webber, was born to the appellant, *Annie Webber*, and Harry J. Webber, October 21, 1893; that the child Blanche died June 16, 1898; that Harry J., the father of the child, died testate, leaving no issue him surviving, but leaving his widow, the appellant herein, to whom he gave, devised, and bequeathed by such will all the property of which he died seised, and that such will was duly admitted to probate.

By the first clause of his will, William A. Webber gave and bequeathed all his personal property to his widow, Mary H., subject to the payment of debts, funeral expenses, and charges of administration. By the second clause of the will, he gave and devised all his real estate to his widow, Mary H., for and during the term of her natural life, but in trust to take care of and manage, and to receive the rents, issues, and profits thereof, and to pay and distribute the net income therefrom quarter yearly, as therein stated, to wit, to *Harriet A.* the net income of certain specific property, and the undivided one-sixth of the net income of the remain-

der of his real estate to each of his five children. By the third clause of his will he gave and devised all of his real estate, from and after the death of his wife, as therein prescribed, to wit: Certain specific real estate, and also the undivided one-sixth part of the remainder thereof, to his daughter, *Harriet A.*, upon the terms and conditions therein named; also another undivided one-sixth part of such residue to each of his three sons, *Albert G.*, William F., and Wilkie A.; and also another undivided one-sixth part of such residue he gave and devised to such person or persons as his wife might convey or devise the same to, and to his or their heirs and assigns, forever. Such portions of the will above mentioned were construed and determined in *Saxton v. Webber*, 83 Wis. 617, 623–630, and are not here in controversy.

As to the other undivided one-sixth part of such residue from and after the death of his wife, and which is here in controversy, he disposed of it by the remaining portion of the third clause of the will, which reads as follows: " And to such person or persons as the county court or court or judge having probate jurisdiction in the county of Milwaukee may appoint trustee of the same, I hereby give and devise, as aforesaid, the remaining one undivided sixth part of the said rest and residue of my said real estate, in trust, nevertheless, to take care of and manage, and to receive the rents, issues, and profits thereof, for and during the term of the natural life of my son Harry J. Webber, and to pay the net income therefrom to my said son Harry J. Webber, quarter yearly, for and during the term of his natural life, and upon his decease to convey the said trust estate to his *issue then living in fee*, or, in case he shall die without issue, then in that case the same to descend to my heirs at law then living in fee."

The case of *Saxton v. Webber*, 83 Wis. 617, was commenced by *Harriet A.* and her husband, May 14, 1890, for partition of the real estate and construction of the will of William

A. Webber, deceased. The clause of the will in controversy was construed in that case as follows: "The devise of the one undivided sixth part of the lands not specifically described to such person or persons as the county court might appoint, in trust to take care of and manage, and to receive the rents, issues, and profits thereof, for and during the life of Harry J., and to pay the net income therefrom to him quarter yearly during his life, and upon his decease to convey the same to his issue then living in fee, or, in case he shall die without issue, then and in that case the same to descend to such of the heirs at law of the testator in fee as shall then be living, only ties up said estate so devised in trust during the life of said Harry J., and hence is not repugnant to the statutes cited, but is a valid trust. It follows that the plaintiffs can claim nothing by virtue of the peculiar provisions of that devise in this action for partition." 83 Wis. 630, 631. Counsel for the appellant contends, in effect, that such construction was unwarranted, and that the last part of the clause quoted should be construed as if it had read: "In case said Harry J. Webber shall die without *having had issue,* the same to descend to my heirs at law then living." Such construction is repugnant to the express language of the will, which declares that, upon the death of Harry J., such trustee was "to convey the said trust estate to his issue *then* living in fee, or, in case he shall die without issue, then and in that case the same to descend to my heirs at law *then* living in fee." "Issue then living" manifestly means living when Harry J. should die, and the words following, that, in case Harry J. should "die without issue," clearly mean such issue as had just been mentioned as "then living."

The same counsel contends that the trust sought to be created by the devise in question was unauthorized and prohibited by law, and vested a legal estate in Harry J. Webber for life; that it was at most a dry or passive trust, and

such as had been abolished by statute,— citing secs. 2073–2075, Stats. 1898, and *Sullivan v. Bruhling,* 66 Wis. 472; *Hannig v. Mueller,* 82 Wis. 235; *Tyson v. Tyson,* 96 Wis. 59. The difficulty with such contention is that the clause of the will, as we construe it, does not come within the statutes or decisions cited. The devise in trust did not entitle Harry J. " to the actual possession of the lands and the receipt of the rents and profits thereof," as provided in the first of these sections; nor was it " intended " thereby to vest in Harry J. " the right to the possession and the profits," as provided in the last of these sections. The statute expressly provides that such sections are not to " be construed to prevent or affect the creation of such express trusts as are . . . authorized and defined " in the chapter on uses and trusts. Sec. 2076, Stats. 1898. One of the sections of that chapter provides that " express trusts may be created for," among other things: " (3) To receive the rents and profits of land and apply them to the use of any person during the life of such person or for any shorter term, subject to the rules prescribed in the last preceding chapter. . . . (5) For the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time " therein expressed. Sec. 2081. See, also, secs. 4025–4027. The statute also provides that " every express trust, valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustees, subject only to the execution of the trust; and the person for whose benefit the trust was created shall take no estate or interest in the lands, but may enforce the performance of the trust." Sec. 2086. Harry J. had no power to assign or dispose of his interest in the rents and profits of the lands. Sec. 2089.

The trust in question was clearly authorized by the statutes cited, and is not repugnant to the " limitations as to

time" mentioned. The statute fixing such limitations, as it existed at the time of the death of the testator, declared that "the absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate," except as therein stated. Sec. 2039, R. S. 1878. Here, as held in the former case, the clause in question "only ties up said estate so devised in trust during the life of said Harry J., and hence is not repugnant" to that statute, "but is a valid trust." Here there is no devise to Harry J. and his issue, nor to Harry J. for life and after his decease to his issue, and hence the argument that the devise in trust created an estate tail is, in our judgment, without foundation. Counsel contends that estates tail are not abolished in this state, but exist as at common law, and that the effect of such an estate, under the statute cited, "is to vest the same, by operation of law, in fee simple in Harry J. Webber and his heirs and assigns." Sec. 2027, Stats. 1898. But the difficulty with such contention is that Harry J. was never "seised in fee tail of any lands  .  .  . by virtue of" such devise, and hence he cannot, under that section of the statute, "be deemed and adjudged to be seised thereof as an allodium." *Id.; Wight v. Thayer,* 1 Gray, 284; *Bone v. Tyrrell,* 113 Mo. 175; *Ray v. Alexander,* 146 Pa. St. 242. Besides, another section in the same chapter of our statute declares that "when a remainder shall be limited to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor." Sec. 2046, Stats. 1898. As stated, Harry J. left no "heirs of his body" nor issue. The mere fact that Harry J. had a little daughter who died nearly a year before his death did not convert his contingent equitable interest into a legal estate.

The clause in the will of William A. Webber, so creating

a devise in trust, is clearly distinguishable from the provisions of any of the wills construed by this court in the cases cited by counsel for the appellant. It is also distinguishable from the provisions of the will construed in *Patton v. Ludington*, 103 Wis. 629, in which the cases so cited are reviewed. We must hold that Harry J. was never seised of the fractional share of the lands so devised in trust, and hence that such lands could not pass from him to his widow, the appellant herein. The appellant's only claim here made to the lands so devised in trust is by virtue of the clause in the will of William A. Webber, quoted above, and the appeal herein is only from the disallowance of such claim. This being so, no part of the will of Mary H. Webber, or the will of Harry J. Webber, is before us for construction or consideration. In other words, the decision in this case is limited to such devise in trust.

*By the Court.*— The judgment of the circuit court is affirmed.

BARDÉEN, J., took no part.