EGGLESTON, Appellant, vs. SWARTZ and others, Respondents.

*November 17, 1910—February 21, 1911.*

*Wills: Construction: Life estate or fee? Validity: Suspension of power of alienation: Mortgages.*

1. A testator seventy-five years of age, in failing health, who by his original will had given all his property to his wife, twelve years his junior, executed a codicil in which he devised to each of his four living children specific tracts of land, all "to be subject to the use, occupation, and control of my wife . . . during the term of her natural life. In case of the death of any of my said children without issue remaining alive, the land . . . devised to him or her is to go to his or her brothers or sisters equally and in equal shares, but in case of them having children then living the same shall go to and belong to such children of such devisees respectively in equal shares." *Held*, that the "death of any of my said children," referred to, did not mean death during the lifetime of the testator or of his widow, but death at any time; and that the estate devised to each of the testator's children terminated at his or her death, with remainder over to his or her children then living, if any, and if none then to his or her brothers and sisters.

2. Such devises did not suspend the power of alienation for more than two lives in being, since under no possible contingency could there be a suspension of the power to convey any tract in fee longer than during the life of the widow and the life of a child of the testator.

3. Since the estate of testator's children terminated at death, a mortgage executed by one of them in his lifetime was subject to the same limitation, and upon the death of such mortgagor the land passed to his children then living, free from any claim of the mortgagee.

 VINJE, J., WINSLOW, C. J., and TIMLIN, J., dissent.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

This is an action to foreclose a real-estate mortgage given by Samuel Swartz to secure certain promissory notes. The mortgage on its face attempts to convey a fee of the real estate described. Samuel Swartz had an estate in these prem-

ises under the will of his father, Peter Swartz. The character of this estate is an issue in this action. Samuel Swartz died intestate, and the action is brought against his widow and his two children as his heirs at law. The children claim to be the owners of the land embraced in the mortgage.

The court found that the action was seasonably brought, that the notes involved were given for a valuable consideration, and that they had never been paid.

Besides the issues thus decided in plaintiff's favor, the two children of Samuel Swartz raised the question of title, claiming title to the premises under the last will and testament of their grandfather, Peter Swartz. By the original will of Peter Swartz, executed June 16, 1874, all of his property was given to his wife. On May 22, 1880, he changed his will by a codicil, bequeathing legacies to certain grandchildren and making provision for each of his four living children by devising to them separately certain specified tracts of land. The provisions appertaining to these gifts of lands are alike in terms and conditions and the limitations imposed thereon apply to each one. The following is the devise to his son Samuel, which is specifically involved in this action, the conditions being the same as to all of them:

"I do give, devise and bequeath unto my son, Samuel Swartz, the southwest quarter of the southwest quarter of section No. four and the west half of the northwest quarter of section No. nine, all in said town of Metomen, county and state aforesaid,—containing 120 acres of land."

These devises of lands to the children are followed by the following provisions:

"All the lands above devised to be subject to the use, occupation and control of my wife, Barbara Swartz, and the rents, issues and profits thereof to belong to her for and during the term of her natural life."

"In case of the death of any of my said children without issue remaining alive the land hereinabove bequeathed and

·devised to him or her is to go to his or her brothers and sisters equally and in equal shares, but in case of them having ·children then living the same shall go to and belong to such ·children of such devisee respectively in equal shares."

It appeared on the trial that Peter Swartz was nearly sev·enty-five years of age when he executed the codicil to his will; that his wife was then sixty-two years of age; that he had been afflicted with a serious disease for the previous seventeen years; that he died the following January; that two of the testator's children were then dead, having left children who were then living; that the four living children were all married, and two of them had children and two had none; that his son Samuel was then living on the farm involved in this action but was estranged from his wife, and they had no children; that by another marriage, subsequent to his father's death, Samuel Swartz became the father of two children who survived him and who are the defendants in this action, with the widow of Samuel.

The court construed the will of Peter Swartz as giving the land in question to Samuel Swartz, subject to his mother's life estate, and held that upon death of Samuel the title and interests in the land passed in fee to his children then living, and that the children of Samuel Swartz held the land free from any claims of the plaintiff. Judgment to this effect and that the complaint be dismissed with costs was entered. This is an appeal from such judgment.

For the appellant there was a brief by *Carter & Pedrick* and *Maurice McKenna,* and oral argument by *Mr. S. M. Pedrick* and *Mr. McKenna.*

For the respondents there was a brief by *Roy Reed* and *John J. Wood, Jr.,* and oral argument by *Mr. Wood.*

The following opinion was filed December 6, 1910:

SIEBECKER, J. The provisions of the will were construed ·by the circuit court as giving to the widow of the testator a

life estate and to each of his four children named in the will a conditional fee terminating at their death, and that the fee so devised to his four children by the will passed on the death of either of them to such children of such devisee as were then living, and in default of children to the brothers and sisters of the devisee. This construction is assailed by the appellant, the mortgagee of Samuel, upon the ground that it appears from the context of the will that the testator intended by the devise in fee of the land to each of his children, and in case of the death of either of them without issue to the other persons designated, that such death of either of his children should refer to death during the testator's lifetime. The testator at the time of making these provisions in his will was nearly seventy-five years of age, in failing health; his wife was then living, twelve years his junior, in good health; his children were then occupying the pieces of land respectively devised to them; and Samuel and his wife lived separate and had no children. The provision in question is that if either of his children die "without issue remaining alive," then the land devised to him or her should "go to his or her brothers and sisters equally," but, in case of such child dying leaving "children then living," it should go to such children in equal shares. In both of these conditions the testator uses language which clearly tends to show that he had in mind a purpose to have his lands go to such persons of the classes named by him as might be living when the contingency happened, namely, the death of either of his said children to whom he devised the land. The phrase "without issue remaining alive," in case of the death of either child, naturally imports, in the connection in which it is used, that he referred to their deaths at any time. This phrase points directly to a time when a death of either of the testator's children might occur. It is also more definite in import than the phrase "without issue" used in such connection. This latter phrase, when so used, is held to apply to and to control a situation as here presented under

sec. 2046, Stats. (1898), as stated in *Webber v. Webber,* 108
Wis. 626, 631, 84 N. W. 896, namely, "when a remainder
shall be limited to take effect on the death of any person with-
out heirs, or heirs of his body, or without issue, the words
'heirs' or 'issue' shall be construed to mean heirs or issue liv-
ing at the death of the person named as ancestor." The lat-
ter part of the clause of the will here presented, namely, "but
in case of them having children then living," clearly refers to
the same event, namely, the time of death of either devisee,
and must be held to refer to the same time as the preceding
clause. The import of this condition in the will, when ap-
plied to the circumstances of the testator at the time of mak-
ing it, supports the claim that the testator had no intention of
declaring that the contingency upon which his grandchildren
were to take, namely, the death of the primary devisee, was
a death of any of his children occurring before his own. His
expectation of outliving any of them seemed slight under the
circumstances, and he would naturally not expect to accom-
plish his object by making his own death the condition for
transmitting his land. That this was his purpose is empha-
sized by the conditions of the gift which includes afterborn
children within this class. These features of the will are suf-
ficient to show that the testator intended to dispose of his
estate by giving his widow the use and income thereof during
her life, and to each of his children a conditional fee with a
remainder over to the children of each of such devisees as
were living at the death of their ancestor, with the contin-
gency, in case either of such devisees died without leaving
any children surviving him or her, that the remainder should
then go over to his or her brothers and sisters in equal shares.
Under these provisions of the will the children of Samuel liv-
ing at the time of his death constituted the class designated in
the will to whom was given the real estate devised to Samuel.
The devise to Samuel in fee was limited by the gift over to
his children, or, if he should leave no children surviving him,

then to his brothers and sisters.   Upon Samuel's death, under
the facts shown, his children took title in fee-simple absolute
under the testator's will.   This result excludes the idea that
the death referred to in the clause under consideration re-
ferred to a time within the life of the testator's widow, to
whom was given the first life estate in the premises.   Cases
bearing on the propositions involved in the foregoing consid-
erations are: *Webber v. Webber,* 108 Wis. 626, 84 N. W.
896; *Chesterfield v. Hoskin,* 133 Wis. 368, 113 N. W. 647;
*Lilllewood's Will,* 96 Wis. 608, 71 N. W. 1047; *Lovass v. Ol-
son,* 92 Wis. 616, 67 N. W. 605; *Vanderzee v. Slingerland,*
103 N. Y. 47, 8 N. E. 247; *Hennessy v. Patterson,* 85 N. Y.
91; *Buel v. Southwick,* 70 N. Y. 581; *Tyson v. Tyson,* 96
Wis. 59, 71 N. W. 94.

The estates created by the will do not suspend the absolute
power of alienation for more than two lives in being at the
creation thereof.   As declared in *Tyson v. Tyson, supra:*

"The principle is that, in order to make the future estate
valid, the suspension of the power of alienation must under
all circumstances terminate at or before the termination of
the second life.   It is not sufficient that it may so happen.
It must so happen in every possible contingency."

The statute is that "such power of alienation is suspended
when there are no persons in being by whom an absolute fee
in possession can be conveyed."   Sec. 2038, Stats. (1898).
Applying these rules to the facts of the instant case, we find
that under the conditions imposed on the estates in land by
the will there can be no absolute conveyance of the fee during
the life of Samuel, but that at his death suspension of the
power to alienate terminates in every possible contingency,
because those to whom the fee is given take it subject only to
a possible life estate of the testator's widow.   She and Sam-
uel were the only two persons in being at the creation of the
estate in remainder in fee simple who had any interest
in the land prior to the children of Samuel, to whom was

given this future estate, dependent upon these precedent estates of the widow and the son Samuel. In no event, therefore, could there be a suspension of the power to convey this property in fee-simple absolute under the provisions of the will for a longer period than that of the life of the testator's widow and of his son Samuel. This satisfies the statute then in existence. *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650; *Saxton v. Webber,* 83 Wis. 617, 53 N. W. 905; *Webber v. Webber, supra; Nellis v. Nellis,* 99 N. Y. 505, 3 N. E. 59; *Buel v. Southwick, supra.*

The circuit court awarded the correct judgment.

*By the Court.*—Judgment affirmed.

The following opinion was filed December 10, 1910:

Vinje, J. (*dissenting*). I am unable to agree with the majority of the court in reaching the conclusion that there was only a life estate devised to each of testator's children with a remainder in fee, upon the death of the devisee, to his issue then living, if any, and if none, then to his brothers and sisters, subject, of course, to the life estate of testator's widow. I construe the will to devise an estate in fee, subject to the life estate of the widow, to each of testator's children, and am of the opinion that the devises in the last paragraph of the will are substitutionary ones, providing where the title shall go in the event a devisee dies before the testator does. We all agree that the devises in the body of the will are absolute and convey the fee unless a contrary intent appears from the last two paragraphs thereof taken in connection with the circumstances under which the will was made.

Sec. 2206, Stats. (1898), provides that "every grant of lands or any interest therein shall pass all the estate or interest of the grantor unless the intent to pass a less estate or interest shall appear by express terms or be reasonably implied in the terms of such grant." This section has been held

applicable to wills (*Baker v. Estate of McLeod,* 79 Wis. 534, 48 N. W. 657), and it must be deemed at least equivalent to a rule of construction, raising a presumption that the whole title passes where an intent to pass a less estate does not appear by express terms or is not necessarily implied in the terms of the grant. It cannot be said that the intent to pass less than the fee appears by express terms in the will under consideration. Neither is it necessarily implied in the terms thereof; for it is a familiar rule of construction of wills that where there is an absolute devise to one, and in the event of his death without issue, to another, it means a death before that of testator. In other words, it is only a substitutionary devise, and if the first devisee survives the testator he takes the fee. *Lovass v. Olson,* 92 Wis. 616, 67 N. W. 605; *Fowler v. Ingersoll,* 127 N. Y. 472, 478, 28 N. E. 471; 2 Jarman, Wills (5th ed.) 759. True, as stated in *Korn v. Friz,* 128 Wis. 428, 107 N. W. 659, this is but a rule of construction, and "yields readily to anything in words or context to indicate a different intention of the testator." But the difficulty is there seems to be nothing in this will in "words or context" to indicate a different intention on his part. For that reason recourse is had, and properly so, to facts outside the instrument itself to support the construction placed upon the will by the court. It is said the testator was old and afflicted with an incurable disease, while his children were in good health and likely to survive him, and hence he could not have meant their death before his own. But he had already suffered seventeen years from his incurable disease. Who could tell how much longer he might suffer, or who could tell where death might first strike? Our tenure of life, be we old or young, sick or well, is so uncertain that it need create no surprise to find even an infirm man seventy-five years of age contemplate the contingency that he may survive some of his children and make suitable provision therefor. Indeed, it seems far less surprising than that a father should, without any apparent

reason whatsoever, be willing to place the fee title in his minor grandchildren, but be unwilling to trust any one of his four adult children therewith—unless it go to them after a brother or sister has died without issue. In that event they take the fee. Can it be seriously maintained that the testator intended such an anomalous result? Let us see what may be the consequences of such a construction. If one child dies without issue the others take the fee. If another dies without issue, the land received from the father through the first child does not pass to the survivors, while that devised directly to him does pass. It seems incredible that the testator should have contemplated and intended such a result. There is consistency in devising a life estate to one and remainder in fee to another, but there is none in devising a life estate to a class absolutely and a fee to the same class contingently, and the testator should not be charged with such inconsistency unless the language used by him is incapable of any other construction. If his scheme had been to give his children a life estate only and his minor grandchildren the fee, he would have provided that in the event of the death of any child without issue the fee should go to the surviving grandchildren instead of to the surviving brothers and sisters. It appears that he was fully capable of unmistakably devising a life estate by will, for he did so, in apt words, to his widow. He could have done it just as easily and clearly to his children. He did not, and as I believe, because he did not intend to do so.

For these reasons I am unable to persuade myself that the testator by the last paragraph in the will intended to cut down the estate already granted to his children from a fee to a mere life estate; but that, on the other hand, out of extra caution perhaps, he added substitutionary devises so that if any devisee should die before he did the will would dispose of the share of the real estate devised to him.

I agree with the court in holding that the will does not violate the rule against perpetuities.

·WINSLOW, C. J.   I concur in the views of Mr. Justice VINJE.

TIMLIN, J.   I concur in this dissent rather than in the majority opinion.   I have, however, reasons for my dissent not herein expressed.

A motion for a rehearing was denied February 21, 1911.