WILL OF KORN: KORN, Appellant, vs. FRIZ, Executor, and others, Respondents.

*April 20—May 8, 1906.*

*Wills: Construction: "Death without issue:" Nature of estate devised: Conditions: Legacy as a lien or charge: Guardians ad litem: Compensation.*

1. The rule that a devise to one with limitation to others in case of his death, or death without issue, is ordinarily to be construed as referring to death during the lifetime of the testator, is one which yields readily to anything in words or context to indicate a different intention of the testator.

2. A will giving to the widow a life estate in all testator's land gave after her death his farm (constituting nearly half his estate) to a son "upon the express condition" that he pay to a daughter of the testator $5,000 within one year after the death of the widow, said $5,000 being devised and bequeathed to the daughter as her share of the estate. It then provided that in case of the

death of said son without issue all of the real estate should go to the grandchildren of the testator who might be living at the time of the death of the said son,—it being stated to be the testator's desire that said real estate be kept and retained by persons of his own blood. *Held*, that in speaking of the death, of the son without issue the testator referred to a death after his own as well as to one before; and that when the son took the farm after the death of the widow he did not take an absolute fee therein. ·

3. The provision of the will as to the payment of $5,000 to the testator's daughter did not make the son's estate in the farm an estate upon condition; but it gave to the daughter the right to a lien or charge for that amount upon the whole title to the farm, which she could enforce or transfer to any one other than the son.

4. Under sec. 2046, Stats. 1898, the death of.the son "without issue" must be construed to mean his death without issue then living.

5. The compensation of a guardian *ad litem* for minors in an action for the construction of a will must be paid by his wards and not out of the estate of the testator generally, though it may be made a charge upon their interest in such estate.

6. Where on appeal in such an action the guardian *ad litem* did not appear further than to join by signature in the brief for the respondents, including the executor, the amount of his compensation will be left to the determination of the court appointing him.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Henry Korn died March 18, 1904, leaving a will whereby, first, he directed payment of debts and expenses out of the personal property; gave to his widow the use and income of all real estate during her life, and directed the executor to pay her such income from the personal property as would provide for her comfort; and proceeded:

"After the death of my said wife I dispose of my property as follows, to wit: Third. I will, devise, and bequeath to my son *William Korn* my farm [description] upon the express condition, however, that he shall pay to my daughter, Phillipina Steele, the sum of five thousand ($5,000) dollars within one year after the death of my said wife, and which

said sum of five thousand dollars shall be the portion hereby devised and bequeathed to my said daughter, Phillipina Steele, as her share of my estate.    And it is further provided that in case of the death of my said son, *William Korn,* without issue, then and in that event I will, devise, and bequeath all of my said real estate to my grandchild or grandchildren who may be living at the time of the death of my said son *William,* share and share alike; it being my desire that said real estate shall be kept and retained by persons of my own blood."

By further paragraphs another piece of real estate is devised to a son, Jacob, on condition that, if Jacob "shall die without issue, in that event I bequeath the property so bequeathed to him by this, my last will and testament, to my grandchild or grandchildren who may be living at the time of the death of said Jacob Korn, share and share alike;" then $500 each is given to a child and a grandchild, and then to two daughters certain specified other lands, in fee simple, and all the residue, both real and personal, to the same two daughters.

Both the widow and all the children survived the testator, but at the time of the trial in circuit court the widow died. The six children were still living, and *William Korn* then had one child living, and one of the daughters had living three adult children and another daughter two minor children.    Deceased left personal property of the value of about $7,400, the farm devised to *William* worth about $15,750, the farm given to Jacob worth about $3,000, and other real estate of the value of about $8,000, according to inventory.    *William* made petition in county court for the construction of the will, especially the third clause thereof, alleging that he had not the means to pay Phillipina Steele her $5,000 legacy except by borrowing it upon the security of the farm, and that, to that end, it was essential that he know his title.    He claimed that he took an absolute estate in fee simple upon the death of his mother to the farm mentioned, while the executor and other persons claimed that his estate therein was sub-

ject to be terminated by his death without issue then living, with remainder over at that time to the grandchildren of the testator then surviving.

The trial court, after finding substantially the foregoing facts, adjudged that *William Korn* has in such lands an estate in fee, defeasible, however, at his death at any time without having issue surviving him at the time of his decease, and subject to the charge of the legacy of $5,000 for Phillipina Steele, and that, upon the death of said *William* without issue then surviving, his estate will then cease and the lands will then vest in fee in such grandchildren of said Henry Korn, deceased, as may be then living, and will so vest charged with said legacy of $5,000 to said Phillipina Steele so far as the same may then remain unpaid. From that judgment *William Korn* appeals.

For the appellant there was a brief by *Tullar & Lockney,* attorneys, and *C. C. Gittings,* of counsel, and oral argument by *Mr. D. S. Tullar* and *Mr. Gittings.* They contended, *inter alia,* that the language of the will being, "in case of the death of my said son, *William Korn,* without issue," etc., the rule of construction is well settled that the true intent and meaning is, "in case of *William's* death without issue *during the lifetime of the testator." Vanderzee v. Slingerland,* 103 N. Y. 47; *Washbon v. Cope,* 144 N. Y. 287; *Benson v. Corbin,* 145 N. Y. 351; *Patton v. Ludington,* 103 Wis. 629; *Fishback v. Joesting,* 183 Ill. 463, 56 N. E. 62; *Arnold v. Alden,* 173 Ill. 229, 50 N. E. 704; *Biddle's Estate,* 28 Pa. St. 59; *Austin v. Bristol,* 40 Conn. 120; *Barber v. Pittsburgh, Ft. W. & C. R. Co.* 166 U. S. 83, 101; *Brown v. Lippincot,* 49 N. J. Eq. 44, 23 Atl. 497; *Jones v. Webb,* 5 Del. Ch. 132; *Briggs v. Shaw,* 9 Allen, 516; *Borgner v. Brown,* 133 Ind. 391, 33 N. E. 92; *Goddard v. May,* 109 Mass. 468; 2 Jarman, Wills (6th ed.) 752; 1 Underhill, Wills, §§ 465, 466; *Smith v. Smith,* 139 Ala. 406, 36 South. 616; *Smith v. Smith,* 186 Mass. 138, 71 N. E. 314; *Hoover v. Hoover,* 116

Ind. 498, 19 N. E. 468; *Kling v. Frick,* 135 Pa. St. 575, 19 Atl. 951, 20 Am. St. Rep. 889; *Mickley's Appeal,* 92 Pa. St. 514; *McCormick v. McElligott,* 127 Pa. St. 230, 17 Atl. 896, 14 Am. St. Rep. 837; 29 Am. & Eng. Ency. of Law (1st ed.) 486. Where a testator makes a personal charge upon a devisee that he pay certain debts or legacies, as in this case, such devisee necessarily takes a fee in the property devised. 4 Kent, Comm. 540; *Doe v. Holmes,* 8 T. R. 1; *Van Alstine v. Spraker,* 13 Wend. 578; *Fox v. Phelps,* 17 Wend. 393; *Jackson v. Bull,* 10 Johns. 148, 6 Am. Dec. 321. The reason for this is that, if the devisee did not take a fee, he might be a loser by paying the debts (or legacies), and the testator is presumed to intend that his gift shall be beneficial to the devisee. *Leavitt v. Wooster,* 14 N. H. 550, cited in *Bell v. Scammon,* 15 N. H. 381, 41 Am. Dec. 706; *Olmstead v. Olmstead,* 4 N. Y. 56; *Harvey v. Olmsted,* 1 N. Y. 483; *Wright v. Page,* 10 Wheat. 204, 231; *Abbott v. Essex Co.* 18 How. 202, 215; *Fuller v. Fuller,* 84 Me. 475, 24 Atl. 946; *Korf v. Gerichs,* 145 Ind. 134, 44 N. E. 24; *Snyder v. Nesbitt,* 77 Md. 576, 581, 26 Atl. 1006; *Jackson v. Bull,* 10 Johns. 148; *Wait v. Belding,* 24 Pick. 129; *Jackson v. Merrill,* 6 Johns. 185, 5 Am. Dec. 213; *Donohue v. Donohue,* 54 Kan. 136, 37 Pac. 998; *Lindsay's Heirs v. M'Cormack,* 2 A. K. Marsh. 229, 12 Am. Dec. 387; *Heard v. Horton,* 1 Denio, 165, 43 Am. Dec. 659; *Groves v. Cox,* 40 N. J. Law, 40; *Ackland v. Ackland,* 2 Vern. 687; *Abrams v. Winshup,* 3 Russ. 350; *Blinton v. Warburton,* 2 Kay & J. 400; *Niles v. Gray,* 12 Ohio St. 320, 329; 2 Redf. Wills, 323; 2 Jarman, Wills, 248–252; Beach, Wills, § 178; 6 Am. & Eng. Ency. of Law (1st ed.) 877; 2 Underhill, Wills, § 685, and cases cited. That this is a personal charge upon the devisee, *William Korn,* see *Bowen v. Knapp,* 79 N. Y. 143.

For the respondents there was a brief signed by *Ryan, Merton & Newbury,* attorneys, and *T. W. Parkinson,* guardian *ad litem,* and oral argument by *E. Merton.* They argued, among

other things, that under the devise in question the testator contemplated the death of *William Korn* subsequent to his own. *Hollister v. Butterworth*, 71 Conn. 57; *In re Denton*, 137 N. Y. 428, 33 N. E. 482; *Naylor v. Godman*, 109 Mo. 543; *Kornegay v. Morris*, 123 N. C. 128; Page, Wills, § 676, and cases cited. The payment of the legacy of $5,000, although a personal charge upon the devisee of the farm, is also in fact so associated with the devise itself that it becomes an equitable charge on the land until paid. *Powers v. Powers*, 28 Wis. 659; *Wiltsie v. Shaw*, 100 N. Y. 191, 195; *Loder v. Hadfield*, 71 N. Y. 92, 97; *Thayer v. Finnegan*, 134 Mass. 62, 65; *Merrill v. Bickford*, 65 Me. 118; *Harris v. Fly*, 7 Paige, 421; *Larkin v. Mann*, 53 Barb. 267, 270; *Kelsey v. Western*, 2 N. Y. 500; *Gridley v. Gridley*, 24 N. Y. 130; *Glen v. Fisher*, 6 Johns. Ch. 34.

DODGE, J. The appellant does not contend against the proposition that the gift over to grandchildren is so associated with the gift to the son *William* that it evinces the intention of the testator not to give an absolute fee to *William* unless the condition of the limitation over to such grandchildren, namely, that *William* shall die without issue, refers to such death during the lifetime of the testator. This, however, he contends is the true construction, and invokes the rule, long recognized, that such a phrase as a gift to one with limitation to others in case of his death, or death without issue, ordinarily is to be construed as applying only to the condition of things prior and up to the death of the testator. *Patton v. Ludington*, 103 Wis. 629, 79 N. W. 1073. This rule, however, like all others with reference to construction of wills, is but a rule of probability and yields readily to anything in words or context to indicate a different intention of the testator, which, as so often said, is the ultimate object of search and discovery in all attempts to construe wills. *Benson v. Corbin*, 145 N. Y. 351, 40 N. E. 11; *In re Donges's Estate*, 103 Wis. 497, 79 N. W.

786.    In considering the present will, and especially the third paragraph thereof quoted in the statement of facts, we find at least three facts strongly indicating that the testator in mentioning the event of the death of his son *William* without issue, as to which he desired to provide, referred to a subsequent demise.    First, it is to be noted that *William* himself was not to take immediately upon his father's death, but was postponed to the death of the widow.    Such fact is by the authorities considered significant of contemplation by the testator of the death of the remainderman at some time subsequent to his own.    Page, Wills, § 676.    Again, there is industriously added to this third paragraph a declaration of testator's desire that his property shall, so far as he can control it, pass to those of his own blood.    While it is not seriously contended that this either confers any title as an express devise, or would serve to qualify any title clearly given, yet it at least bears upon the probability that the testator had in mind only the contingency of *William's* death before his own.    This generally expressed desire of persistency of title amongst his own descendants would be quite as much defeated by *William's* death without issue after testator's as before, for, upon *William's* death, either during the life of the widow or afterwards, if either his remainder or title became absolutely vested in fee, his wife would be his heir at law or he would be free to dispose of the property by will, or deed, to others than his father's descendants.    But more significant yet is the fact that the limitation over is to a class to be ascertained and determined, finally and irrevocably, at the moment of *William's* death, and which might well consist of different persons at any moment of time.    That class is "my grandchild or grandchildren who may be living at the time of the death of my son *William*."    It is inconceivable that in that sentence the mind of the testator was fixed upon a period prior to his own death. With several married children, and no apparent reason for preferring one grandchild to another, it is, of course, in the

highest degree improbable that he meant by this will to fix a
date, perhaps years before his own death, at which the grand-
children who should share this large portion of his estate
should become determined to the exclusion of others who
might be born later, and with the resulting right to children
of any of the grandchildren living at *William's* death who
might die between that date and the testator's.    These indicia
are quite sufficient to convince us that wherever the expression
"death of *William* without issue" was used by testator in this
third paragraph he contemplated a death subsequent to his
own quite as much as one before.

Perhaps the most forcible argument against this conclusion
is that the payment of $5,000 to Phillipina Steele by *William*
is thereby rendered difficult, if not impossible, and that, pre-
sumptively, the testator, knowing of *William's* limited finan-
cial ability, could not have intended such a situation.    It is
doubtless true that, if *William* has a base fee determinable at
any moment by his death, his estate is of such uncertain value
as to render very doubtful whether he could borrow such a
sum as $5,000 upon its security.    To this it might be an-
swered that, from a practical business point of view, *Will-
iam's* mortgage upon the land covering an estate determinable
only at his death, supplemented by a safe life insurance pol-
icy, might well provide reasonably perfect security, so that it
can hardly be said that payment of this legacy would be im-
possible, though there might still be doubt whether, for so un-
certain a tenure, *William* would be willing to make the pay-
ment.    But if it shall be determined, as it was by the trial
court, that to Phillipina is given an absolute charge or lien
upon this land, as land, and not alone upon *William's* estate
therein, then there would be a situation where she would have
a right absolute and assignable to another; an assignment of
which being added to a mortgage by *William* would give to
any one furnishing the money to satisfy her legacy an unques-
tionable right to exhaust this $15,000 worth of land to the ex-

tent necessary for his reimbursement.  Hence, if such charge
was intended by the testator, he did not create a situation
where payment was at all impossible.

This naturally brings us to a consideration of the intent
with reference to this legacy.  The will does not, in terms,
provide that the same should be a charge, but uses the expres-
sion that the devise to *William* is upon the condition that he
shall, within one year after the widow's death, pay this
amount to Phillipina.  The expression "upon condition," if
not otherwise qualified, might be construed as a condition pre-
cedent so that *William* could not take the land at all without
making such payment, but since he was to take in possession
immediately upon his mother's death, and was not required to
make the payment until afterwards, namely, within a year,
of course no condition precedent was intended.  If, then, it is
a condition at all, it is a condition subsequent; but there is no
suggestion that his title is to be divested upon breach of that
condition, and no provision is made for any one else to take
the land upon such breach.  Hence, it seems necessary to de-
duce some other practical meaning and purpose from this lan-
guage.  We are persuaded that the trial court reached sub-
stantially the right conclusion on this subject.  We think it
plain that this $5,000 provision for the daughter—all that she
receives under the will—was a very dominant purpose in the
mind of the testator, and that his wishes, as evinced by the
will, would not be satisfied unless she receives it; hence that
he intended to declare his will that out of this farm, consti-
tuting nearly half of his estate, should be paid, in any event,
$5,000 to the daughter Phillipina; that this purpose should
not be defeated either through *William's* inability to raise
that amount of money upon his limited estate therein, or oth-
erwise.  To reach this result he must have intended to confer
upon her the right to a lien or charge for this amount upon the
whole title in these premises, and we agree with the trial court
in holding that the will does so.  Such lien or charge being

created, of course the right exists in her to invoke the powers of a court, whether of law or equity, to exert its proper machinery to render that lien effective in producing the money she is entitled to have. Courts of equity have many such methods within their power, prominent among which is the judicial sale, whereby any title or any portion found necessary may be transferred to a purchaser who will pay the amount of money requisite to satisfy the charge. We think it proper to declare, also, that, she being *sui juris,* her right to this legacy, with all its accompanying security, can be sold or transferred by her like any other property, so that any one, other than *William,* paying to her the $5,000 to which she is entitled may, with her co-operation, acquire all her rights in the land. We presume that the trial court intended to declare, by its judgment, a charge of this character, and no modification or change of the judgment, so construed, is necessary.

It is suggested rather than contended that the condition upon which *William's* estate is to terminate, namely, his death without issue, is already rendered impossible by the fact of issue born to him. Doubtless there are many cases in which courts have held that "death without issue" may mean death without issue born, but that construction has been excluded, except where clearly intended, by our statute (sec. 2046, Stats. 1898), which provides that "when a remainder shall be limited to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

A guardian *ad litem* was appointed for the protection of the interests of minors. He did not appear in this court further than to join by signature in the brief for the respondents, including the executor. He asks that compensation be allowed him, to be paid out of the estate. Upon this subject our views have been so fully expressed in *Tyson v. Richardson,* 103 Wis. 397, 79 N. W. 439; *Kronshage v. Varrell,* 127 Wis. 597, 107

N. W. 342; *Stephenson v. Norris, ante,* p. 242, 107 N. W. 343, that we do not need to enlarge upon them.    The compensation to the guardian *ad litem* must be paid by his wards and, to the extent of any property or estate belonging to them in this litigation, it may be made a charge thereon.    These things can all be done by the court appointing the guardian *ad litem.* Had his services upon the appeal been performed in the presence of this court so as to give it any advantage over the county court in knowledge of their character, we should probably fix the amount of reasonable compensation therefor, as was done in *Stephenson v. Norris, supra.*    But in the present instance we have no such knowledge, and the county court can as well acquire the information necessary to fix such amount.

*By the Court.*—Judgment affirmed; neither party to tax costs against another in this court; appellant to pay clerk's fees.