## WILL OF HARRINGTON.

*March 17—April 5, 1910.*

*Wills: Construction: Perpetuities: Two lives in being: Trusts: Time
    fixed for distribution: Survivorship: "Remaining living heirs:"
    Indefinite failure of issue.*

1. Where a disposition of real property by will is questioned for re-
    moteness of time of vesting, the inquiry involves, not the num-
    ber of estates which precedes the time of vesting, but the num-
    ber of designated persons living at the time of the death of the
    testator who must die before it can be known in whom the title
    to the property will vest.
2. The power of alienation is suspended beyond the period permitted
    by statute by the creation of future estates when the period
    within which such estates can vest is so remote that the persons
    in whom they are to vest cannot be ascertained until after the
    lapse of more than two lives in being at the death of the testa-
    tor and twenty-one years in addition.
3. The power of alienation may also be suspended by a devise in
    trust where the trust term exceeds two lives in being and
    twenty-one years and alienation prior to that time would be in
    contravention of the trust and void under sec. 2091, Stats.
    (1898).
4. To construe a will not expressly bequeathing personal property in
    trust as creating a trust with the designated executors as trus-
    tees, is proper when this is necessary to carry out the apparent
    intention of the testator, but not otherwise.
5. Provisions in a will specifying a fixed time certain to arrive for
    the distribution of testator's personal property among his sur-
    viving children and the children of any deceased child must, as

the larger and more significant indication of intention, override mere words and forms of expression not inconsistent therewith but somewhat indicative of a contrary intention.

6. Where, after devise of a life estate to two persons, a life estate in remainder is devised to each of testator's four children, and this is followed by a provision that in case of the death of either one of the four children the property willed to either of them is to be equally divided to the remaining living heirs of the testator, subject to the same rule of descent and governed by the same rule as is the property willed directly to the testator's children, there is an apparent intention of the testator that after the death, subsequent to his own, of either of his children without issue the share of such child and the same estate which was provided for such child should pass to the surviving children of testator and to the issue, then living, of any other deceased child.

7. Such a provision shows also an intention that the property so passing to the survivors shall be affected by the same quality of survivorship, so that in case of other deaths of testator's children without issue the whole property would accumulate in the last survivor, except as it had been diminished by vesting in part in the issue of children who died leaving issue.

8. Alternative legacies and bequests conditioned upon the "death of all my children and any and all children or heirs being their descendants," "the death of all my children and their heirs, meaning any grandchildren that may be born hereafter," and "the death of all my children and their children or heirs," following a fixed time, certain to arrive, for distribution of personal property among testator's children and the child or children of any deceased child of testator, relate to such failure of issue at the time fixed for distribution, and not to an indefinite failure of issue.

APPEAL from a judgment of the circuit court for Walworth county: E. B. BELDEN, Circuit Judge. *Affirmed.*

·For the appellants *M. S. Harrington* and others there was a brief by *W. D. Corrigan, F. H. Gugel,* and *H. H. Harrington,* and oral argument by *Mr. Gugel.*

For the appellant *Nashotah House* there ·was a brief by *Ryan, Ogden & Bottum,* and oral argument by *L. M. Ogden.*

For the respondents there was a brief by *Simmons & Walker, D. B. Barnes,* and *E. L. von Suessmilch,* and oral

argument by *Mr. John B. Simmons, Mr. Suessmilch,* and *Mr. Barnes.*

TIMLIN, J.   This is a suit for the construction of the will of Nicholas M. Harrington, who died May 30, 1888, and whose will was admitted to probate in the county court of Walworth county on July 17, 1888.   The testator left surviving him his widow, Catherine M. Harrington, and Frank C., *John R.,* and *George N. Harrington,* and *Jennie E. Bowers, née Harrington,* his children and only heirs at law.   *Jennie E. Bowers* married after the execution of the will and before the death of the testator, but she had no children living at the date of testator's death.   Two were afterward born to her, each of which lived but a few days. She is still living.   Frank C. Harrington died unmarried and without issue on September 22, 1905.   *John R.* and *George N. Harrington* are still living, unmarried, and without children.   Catherine M. Harrington, testator's widow, died September 8, 1900.

This suit was begun May 21, 1907.   In the will *Jennie E. Bowers* is called *"Jane"* and sometimes *"Jennie."*   The will was evidently written by the testator, and from among its rambling, confused, and incoherent provisions the following are selected as indicating the general plan of the testator in the disposition of his property:

(1) Give and bequeath to my widow Catherine M. Harrington, sister *Julia A. Crosby,* daughter *Jane E. Harrington* the use of the whole of my estate, real and personal, during their natural lives, unless either one should marry, then to be provided as hereinafter mentioned.

(2) After the death of Catherine M. Harrington and *Julia A. Crosby* I give and bequeath the use of the Inlet Farm to Frank C. Harrington during his natural life, and after his death to descend to his heirs.   Also I give and bequeath all the personal property belonging to or connected with said farm to Frank C. Harrington after the death of Catherine M. Harrington and *Julia A. Crosby.*

(3) I give and bequeath the use of the Prospect Farm, during their natural lives, to my sons *John R. Harrington* and *George N. Harrington* after the death of Catherine M. Harrington and *Julia A. Crosby,* to descend to the heirs of said sons after their death. All personal property on the farm after the death of Catherine M. Harrington and *Julia A. Crosby* to become the property of *John R.* and *George N. Harrington.* After the death of my said sons *John R.* and *George N. Harrington* said land is to descend to their heirs.

(4) I give and bequeath to my daughter *Jennie,* should she marry, the use of two dwelling houses (described); also give and bequeath to her after the death of Catherine M. Harrington and *Julia A. Crosby* the use of a piece of land (described); also give and bequeath to her after the death of Catherine M. Harrington and *Julia A. Crosby* the use of another piece of land (described). All of said property being real estate willed to my daughter is given to her during her natural life and at her death is to descend to her heirs.

(5) In case of the death of either one of my children, the property, real or personal, willed to either of them is to be equally divided to the remaining living heir of mine, subject to the same law of descent and be governed by the same rule as is the property willed directly to them in this will.

(6) I give and bequeath the use of all the remaining real estate to Catherine M. Harrington and *Julia A. Crosby* and my daughter during their natural lives, and afterward the use to be equally divided between my heirs during their natural life.

(7) Executors are to have the right and power to convey by good and lawful title certain described land not included in the foregoing devises. Also they may sell and convey, if all parties interested are united, two of the tracts devised to *Jennie* subject to the prior use of Catherine M. Harrington and *Julia A. Crosby.*

(8) A small piece of real estate is given to his brother Milton S. Harrington during his natural life; at his death this to descend "to my nearest heirs."

(9) "Now, as to my personal property, I give and bequeath the use of it (except such as may hereinafter be excepted) to my beloved wife Catherine M. Harrington, *Julia A. Crosby,* and my daughter *Jennie A. Harrington,* during their natural lives."

(10) "Should my daughter marry, my executors are to pay her the sum of $500 in money and charge the same to her part, as a part of her share of the personal property.

(11) "I also give and bequeath to my daughter *Jane E. Harrington* the dividends on five shares of the capital stock of the First National Bank of Racine, and I hereby appoint and name the cashier of said bank and his successors as trustees and guardian of said bank stock to take care of said stock for the use and benefit of my daughter *Jane;* but in no event is she, my daughter, or said trustee, authorized to sell said stock; and in case of the death of my daughter *Jane* without issue, said trustee is authorized to pay the dividends to my remaining heirs, but said stock is in no way to be disposed of; but is to remain in said bank during the existence of said bank, to be kept by said cashier for the use and benefit of my heirs."

(12) I give and bequeath the dividends of five shares of the capital stock of the First National Bank of Elkhorn to my beloved sister *Julia A. Crosby,* during her life, and appoint the cashier of said bank and his successors trustees for the care and management of said stock, and pay the dividends to said *Julia A. Crosby,* but neither said trustee or said *Julia A. Crosby* is to have the power to sell the stock. This bequest is made in the place of a note said *Julia A. Crosby* holds against me, and pay one year after my death, which note is hereby revoked and canceled.

(13) All the rest of my personal property is to remain just as it now is, subject to and under the control and management of my beloved wife Catherine M. Harrington, *Julia A. Crosby, Jane E. Harrington,* Frank C. Harrington, *John R. Harrington,* and *George N. Harrington,* whom I appoint and name as my executors; and to have the entire control of my property, real and personal, and to carry out the intent and spirit of this will, and all sales, and all business is to have the concurrence and unanimous consent of all said executors.    No bonds to be required or given by said executors.

(14) The household property, books, carriages, are subject to the use of my wife Catherine M. Harrington and *Julia A. Crosby,* and *Jane E. Harrington,* Frank C. Harrington, *John R. Harrington,* and *George N. Harrington,* and any change or sale is to be subject to the consent of the

above named executors, and at the death of my wife Cather-
ine M. Harrington and *Julia A. Crosby,* and in three years
thereafter, an equal division is to be made, share and share
alike, between my children or such of them as may be liv-
ing; except the personal property reserved to the parties or
persons to whom it is willed, remaining on the farms at the
time of the death of said Catherine M. Harrington and *Julia
A. Crosby* as heretofore provided in this will.

(15) All the money, stocks, or other personal property is
to be equally divided between my children except the $500
provided for my daughter in case she should marry, which in
that case is to be deducted from the amount of money found
due her on an equal division of my personal property to be
made within three years after the death of my wife and
*Julia A. Crosby,* except the personal property mentioned as
being on said farms, which said amount on said farms is not
to be invoiced, and is to go and belong to my respective sons
to whom said land is willed.

(16) In order that there may be no misunderstanding in
regard to my meaning, I intend my wife and *Julia A.
Crosby* shall have their living and support out of my prop-
erty during their natural lives unless they should marry, and
in that event they are to each have their support during their
natural lives, but no part of said property is to go to the sup-
port of their husbands, and the control of my property shall
pass into the hands of and be under the control of my chil-
dren Frank C., *John R., Jane E.,* and *George N. Harrington,*
and they are to give a reasonable support to Catherine M.
Harrington and *Julia A. Crosby* during their natural lives.

(17) In case my daughter shall marry, my executors here-
tofore named are to pay her the sum of $500, but no more
until three years after the death of my beloved wife and
*Julia A. Crosby.* After the death of the last named, then
my daughter *Jane E. Harrington* is to have the use of the
real estate provided for her in this will, during her natural
life, and then to descend to her heirs.

(18) As I have $2,000 life insurance due me at my
death my executors are directed to take up or buy a certain
mortgage against my brother Milton S. Harrington's house
and lot where he now lives and hold said mortgage or take a
new one at three per cent. interest annually during my said

brother's natural life, allowing my said brother to pay said mortgage at his pleasure.

(19) All surplus money made from my estate by my said executors and any and all money due or to become due my estate is to be put at interest after the support of the parties hereinbefore provided.

(20) I hereby nominate and appoint James F. Lattimer and Inglis as trustees to take charge of any and all money heretofore loaned by them or they may hereafter receive, which is to include all my personal estate in notes, mortgages, and the money, if any, that may remain in the hands of H. B. Claflin & Co. of New York, also my life insurance money, and said Lattimer and Inglis are to account to my executors for said money that they may receive at the rate of seven per cent. per annum, and reinvest the same and account once or twice in each year for all the money they may have in or under their control. Any moneys otherwise provided for or disposed of is not to be subject to said Lattimer and Inglis, and after and at the end of ten years said money (and its accumulation) is to be equally divided share and share alike, but in no instance shall either or any of my heirs have the power to sell or in any way dispose of said sum of money and its accumulation until said ten years have expired.

(21) The $500 now forming a part of the investment of E. Lattimer & Co., of which I am a partner, is to remain in said banking firm, and my property of any and all kinds is to remain as liable for all the liabilities of said banking firm the same as though I was living, and all dividends shall be paid to my wife, this provision to remain and be in full force until the dissolution of said banking firm, either by death or dissolution, and if said banking firm shall cease by either the above causes before the expiration of ten years, then the said banking firm shall pay all the money due my estate to the said Lattimer and Inglis to form a part of the money subject to their control, and at the end of ten years to be equally divided with my living heirs.

(22) The intention being to have my wife Catherine M. Harrington, my beloved wife's sister *Julia A. Crosby* the entire use and direction of my real and personal property during the natural lives, and then if the ten years have expired

of the agency of said Lattimer and Inglis my personal property is to be divided equally amongst my four children, share and share alike, but the division of my personal property is not in any event to be made until the death of my beloved wife Catherine M. Harrington and *Julia A. Crosby.* Should each of the last named die before the ten years, said personal property is to remain in the hands of said Lattimer and Inglis, . . . it being the intention of said testator that said personal property is to be equally divided between my children living at the time they may be entitled to said property.

(23) In the event of the death of all my children and any and all children or heirs being their descendants, $5,000 is hereby donated to Nashotah Theological Seminary (*Nashotah House*). I give and bequeath to Christ's Church in Delavan, Wisconsin, the sum of $500 to be laid out in purchasing a church bell to be put in the tower of said, neither of these donations are binding or to be paid unless in case of the death of all my said children and their heirs meaning in children or grandchildren that may be born thereafter.

(24) The rest of my property, real and personal, in the event of the death of all my children and their children or heirs, is to be share and share alike divided between my half-brothers and half-sisters.

The circuit court held that Catherine M. Harrington and *Julia A. Crosby* took a life estate or interest in all the real and personal property except that real estate devised to *Jennie* in the preceding paragraph 4, the bank stock described in paragraph 11, the bank stock described in paragraph 12, the household property, etc., described in paragraph 14, the $500 described in paragraph 21, the real estate devised by paragraph 8, and that this life estate and interest was valid and subject to the management of the executors named in paragraph 13.

As to the real estate in paragraph 4 and the $500 mentioned in paragraph 17, the court held that the latter should be paid over to *Jennie* and deducted from her share of the personal property on the distribution hereinafter mentioned; that *Jennie* took a life estate in the real estate mentioned in

paragraph 4, lots 18, 19, and 22, in block 12, in the village of Delavan, with remainder in fee to her surviving children, if any. What will become of this real property in case of the death of *Jennie* leaving no surviving children is not found. This disposition of these lots is not excepted to by either appellant.

With respect to the bank stock described in paragraph 11, this should be held in trust by the cashier of the bank, the income thereof to be paid over annually by this trustee to *Jennie* during her natural life, on her death leaving issue to such issue or their heirs or legal representatives during the corporate existence of the bank, upon the dissolution of the bank the principal to be paid over in equal shares to said issue, their heirs or legal representatives, but, in the event of *Jennie* dying leaving no issue surviving her, then the income from the five shares of bank stock should be paid over in equal shares to the surviving children of the testator, the issue of any deceased child taking the share which would otherwise have gone to such deceased, and, upon the dissolution of the bank and after the expiration of three years from the death of *Julia A. Crosby,* the principal of said five shares to be paid in equal shares to the then living children, if any, of the testator and the issue of any such deceased child, and, in case of the death of all the children of said testator during the corporate existence of the bank leaving no issue surviving, then the principal of said five shares to be paid to the said *Nashotah House* and to Christ's Church in the city of Delavan in the proportion of ten elevenths to the former and one eleventh to the latter. With respect to the other five shares of bank stock mentioned in paragraph 12, the court held that this property was to be held in trust by the cashier of that bank, the income paid over annually by this trustee to *Julia A. Crosby* during her natural life, and at her death said bank stock would fall into the residue of the personal estate, to be divided and distributed as hereinafter mentioned.

With respect to the household property, etc., mentioned in

paragraph 14, the court held this bequeathed to Catherine M. Harrington, testator's widow, and *Julia A. Crosby* and the four children of the testator for their use in common during their respective lives, and after the death of all of them, should any of that property remain, the same is to be distributed as a part of the residue of the estate. This is not excepted to by either appellant.

With respect to the $500 mentioned in paragraph 21, that is to remain part of the capital of the banking firm mentioned, and the income paid over annually to Catherine M. Harrington, widow of the deceased, during her natural life. In case of the dissolution of the banking firm before the expiration of ten years from the death of the testator, this principal to be paid over to Messrs. Lattimer and Inglis of Hampton, Iowa, to be invested by them along with other funds of the testator in their hands, and finally divided and distributed in the same manner as other moneys in their hands, and as hereinafter mentioned.

With respect to the estate in paragraph 8 devised by the testator to his brother Milton S. Harrington for life, the remainder in fee vested at once on the death of the testator in his children, subject to said life estate.

With respect to the real estate mentioned in paragraphs 2 and 3 and part of that in paragraph 4, and all that in paragraph 6, the court held that the attempted disposition of that property after the lives in being of Catherine M. Harrington and *Julia A. Crosby* and testator's children was void for remoteness, and that the persons ultimately entitled thereto under this will could not be ascertained until after the expiration of more lives than two in being at the time of the creation of the estate. It therefore passed to the heirs at law of testator as intestate property, but subject to the life interest of Catherine M. Harrington and *Julia A. Crosby*.

The court considered that the will of the testator as to all personal property was valid, and contravened no rule against

remoteness; consequently that the disposition of the prop-
erty on each of the two farms mentioned in paragraphs 2
and 3 was valid, and that after the death of Catherine M.
Harrington and *Julia A. Crosby* the personal property on the
farm mentioned in paragraph 2, known as the Inlet Farm,
because Frank C. Harrington died intestate prior to the
death of *Julia A. Crosby,* will go to the surviving children of
the testator, Nicholas M. Harrington, in equal shares under
paragraph 5.    The personal property on the Prospect Farm
mentioned in paragraph 3 is upon the death of *Julia A.
Crosby* to become the property of *John R. Harrington* and
*George N. Harrington,* sons of the testator, equally and in
common, provided they are then living.    What becomes of
this in case both of the last-named sons of testator have de-
ceased prior to the death of *Julia A. Crosby* and leaving no
issue is not found or adjudged.

The circuit court further decreed that after the death of
*Julia A. Crosby* (more than ten years having elapsed since
the death of testator) the interest in the capital of the bank-
ing firm of E. Lattimer & Co., if that firm has not dissolved,
and the avails of that interest if the banking firm has dis-
solved, and all the money and property of testator in the cus-
tody of Lattimer and Inglis, and all surplus or increase real-
ized by the executors, are to be distributed equally among
the then living children of testator and the issue then living
of any such deceased child; that three years after the death
of *Julia A. Crosby* all the residue of the property left by
testator and all real estate of which the executors had a
power of sale is to be by the executors divided equally be-
tween the children of testator then living and the issue of
any such child deceased, such issue taking the parent's share,
but deducting from the share of the daughter *Jennie* the
$500 advanced to her upon her marriage, if in fact such ad-
vance was made,

Catherine M. Harrington has deceased, and in one of the

briefs of counsel we find it stated that the banking firm of E. Lattimer & Co. has dissolved; but we cannot take judicial cognizance of that fact. The judgment of the court below, while it works out a scheme of division and distribution under this will with praiseworthy diligence and ingenuity, is yet faulty, in that it does not finally dispose of all questions of construction possible to be disposed of, and does not sufficiently regard existing facts and conditions, such as the dissolution of the firm of Lattimer & Co., which is not found either way, the sale of some of this property in the testator's lifetime, and extrinsic facts of this nature generally. But the parties affected by these defects in the judgment do not appeal, and the investigation of such questions is not involved in the appeal of the *Nashotah House* and the half-brothers and half-sisters, who are the only appellants. We shall therefore consider only the questions raised by these appellants.

The half-brothers and half-sisters of testator contend with respect to the real property that the circuit court should have construed the life estate or interest given by the will to Catherine M. Harrington and *Julia A. Crosby* as an estate for only one life, namely, the life of the survivor of these two, and that each of the four children of testator then took another life estate which terminated with his life. If he dies leaving issue, then a one-quarter interest in the real estate vests in this issue. If he dies leaving no issue, a quarter interest in the real estate vests in the half brothers and sisters subject to the legacies to *Nashotah House* and Christ's Church. But this seems to us to contravene both the law and the intention of the testator. All inquiry concerning whether Catherine M. Harrington and *Julia A. Crosby* took as joint tenants or tenants in common seems to us irrelevant and immaterial.

In the first place, a devise of real estate during the life of the longest liver of two designated persons in being is, and

has always been, considered a devise for two lives in being, just as a devise of real estate during the life of the longest liver of ten designated persons in being is for ten lives in being, and this is what was referred to by the expression, "all the candles must be alight at once." It is not the number of life estates created which we are to consider, but the number of lives in being which must expire before it can be ascertained in whom the title to the property shall vest. *Jennings v. Jennings,* 7 N. Y. 547; *Purdy v. Hayt,* 92 N. Y. 446. The lives in being designated by the testator may be the lives of the devisees or of beneficiaries under a trust, and the carrying out of the will may require the restraint of alienation during these lives, because during that time the remaindermen are contingent and unascertainable, and therefore the power of alienation is suspended, or because the trust created by the will may continue over the number of lives allowed and during that time alienation be impossible, under sec. 2091, Stats. (1898), in all cases where such alienation would be in contravention of the trust. Or persons in being at the creation of the estate who do not take under the will at all may be designated and the number of persons so designated constitutes the number of lives in being, although the suspension of alienation can only continue during the life of the longest liver of the persons so designated.

In the instant case, even on the above-mentioned theory of counsel for the half brothers and sisters, three lives in being must expire before it could be ascertained who would ultimately take the property, or whether the title would ultimately vest in some unborn grandchild of the testator, and hence there would be a suspension of the power of alienation during these three lives. But it is, we think, contrary to the intention of the testator as evidenced by this will to hold that, after the decease of Catherine M. Harrington and *Julia A. Crosby,* each of the testator's children took only a life

estate in one fourth of testator's real property which ter-
minated with his death, and then vested in the half brothers
and sisters in default of issue.

Paragraph 5 provides that in case of the death of either
one of the four children the property, real or personal, willed
to either of them be equally divided to the remaining living
heirs of the testator, subject to the same rule of descent and
be governed by the same rule as is the property willed di-
rectly to the testator's children.    This relates to the death of
either one of testator's children after the death of the testator.
*Korn v. Friz,* 128 Wis. 428, 107 N. W. 659; *Chesterfield v.
Hoskin,* 133 Wis. 368, 113 N. W. 647.    This for the reason
that the estate devised to testator's children is a life estate,
and because from the whole purview of the will, including
the legacy to *Nashotah House* and the devise to the half
brothers and sisters, it is apparent that the testator intended
that neither this legacy nor the devise to the half brothers
and sisters should take effect in whole or in part so long as
there was a child or grandchild of the testator living.    This
fifth paragraph must also be construed with reference to the
disposition in the will made of the two farms called the Inlet
Farm and the Prospect Farm, and the disposition made of the
real property to *Jennie.*    "The remaining living heirs" of tes-
tator would be his surviving children and the children of any
such child deceased.    But the property is to be equally di-
vided to the remaining living heirs.    This, to harmonize
with other provisions of the will relating to the devise of real
estate, must be taken to mean the death of either one of the
testator's children without issue, and these two words may be
supplied.    A provision in the will like that in paragraphs 2,
3, and 4, expressly providing that at the termination of a
life estate in real property the property should descend to
the heirs of the life tenant, would be contradicted by this
paragraph 5 if we should hold that in case of the death of
one of the same life tenants leaving children this property
should not vest in these children, but should be equally di-

vided between such children and all the other living heirs of the testator. They must be harmonized, if possible, and the way to harmonize these provisions is to construe the fifth paragraph as applying to the case of the death occurring after testator's death of either one of testator's children without issue. In that case the property, real or personal, willed to either of testator's children is to be divided equally to the remaining living heirs of testator, which includes children of testator and certain grandchildren of testator under our statute. But this estate so passing from the child who dies without issue to the remaining living heirs of the testator is to be subject to the same law of descent and governed by the same rule as is the property willed directly to the children of testator. This must mean that the property so passing over to the survivors was intended to be affected by the same quality of survivorship, and so, in case of other deaths of testator's children without issue, the whole property would accumulate in the last survivor, except as it had been diminished by vesting in part in the issue of children who died leaving issue. In such case, at the time of the death of that child of the testator who died first without issue three lives in being at the creation of the estate would have expired, and the real property would pass to the surviving brothers and sisters, children of the testator, until the death of another of the children without issue, when the share he received through the death of his brother or sister without issue, together with his own share, would pass to the two surviving children of the testator, and so on. On the other hand, in case of the death of any one of the children of the testator leaving issue surviving him, it could not be known until the expiration of three lives in being at the time of the creation of the estate whether such issue or the other brothers and sisters would take. All this leads to the conclusion that the circuit court properly construed the will with reference to the real property.

In the appeal by *Nashotah House,* called in the will Na-

shotah Theological Seminary, only the disposition by the
court of the personal property and of the real estate in respect
to which the power of sale is given is criticised.    The learned
counsel for that appellant makes no attack upon the ruling of
the court below regarding the invalidity for remoteness of
the devise of the other real estate.    But he contends that the
will should have been construed as vesting the title to the
personal property and real estate which is subject to a power
of sale (excepting that personal property which is otherwise
specifically bequeathed) in the executors named in the will
in trust to pay the income thereof. to Catherine M. Harring-
ton and *Julia A. Crosby* during their natural lives, and upon
the death of the survivor to pay the net income thereof to the
then surviving children of said testator during their natural
lives, and upon their death to the descendants of testator,
and, in case no such descendants should survive them, to pay
to the appellant *Nashotah House* the sum of $5,000 and to
Christ's Church in Delavan, Wisconsin, the sum of $500, and
divide the residue, share and share alike, between the half-
brothers and half-sisters of the testator or their heirs.    The
effect of this construction of the will would be to establish a
trust with respect to the personal property with the execu-
tors as trustees, which would continue during the lives of
Catherine M. Harrington and *Julia A. Crosby* and the lives
of the four children of the testator, the title to the corpus of
the trust estate then to vest in the grandchildren of testator
if any such were living at the death of the last surviving
child of the testator; if none was living, then to vest in the
half brothers and sisters of the testator and the legacies to
*Nashotah House* and Christ's Church to become due and pay-
able.    This no doubt is proper and permissible in all cases
where the establishment of such trust with the executors as
trustees is necessary to carry out the intention of the testa-
tor.    *Swarthout v. Swarthout,* 111 Wis. 102, 86 N. W. 558.

The substantial difference between this disposition of the

estate of the testator under the will and that disposition made
by the circuit court is that the disposition proposed by the
counsel for *Nashotah House* rejects the view of the circuit
court that the testator intended that this personal property,
not otherwise specifically bequeathed, should be distributed
in part among the children and grandchildren of testator who
might be living at the death of *Julia A. Crosby* by one dis-
tribution, and by another distribution three years later the
whole residue should be distributed among his children and
grandchildren then living.

Are these provisions inconsistent with the intention on the
part of the testator to continue his personal estate in the
hands of his executors in trust past these periods fixed for
distribution and until all the grandchildren of testator, if
any there be living at the death of the last living child of
testator, have died, and so preserve the legacies for *Nashotah
House,* Christ's Church, and the bequest to testator's half
brothers and sisters? We think they are. The fact of dis-
tribution at a time certain to arrive must have loomed up
larger in the mind of this layman than mere legal forms of
expression. The principal disposition of his personal prop-
erty had more weight and significance with him than the al-
ternative disposal or the alternative payment of legacies.
*Colby v. Doty,* 158 N. Y. 323, 53 N. E. 35. It cannot be
presumed that after distribution among his children of this
personal property he intended there should continue restric-
tions on its use, enjoyment, and disposal, and that at the end
of the life of the survivor of his children or grandchildren,
notwithstanding this distribution, a claim should accrue or
continue in favor of the appellants or either of them. "In
the event of the death of all my children and any and all
children or heirs being their descendants, $5,000 is hereby
donated to Nashotah Theological Seminary." This is the
language of testator with reference to that legacy. "Neither
of these donations are binding or to be paid unless in the

case of the death of all my said children and their heirs
meaning in (any) children or grandchildren that may be
born thereafter." "The rest of my property real and per-
sonal, in the event of the death of all my children and their
children or heirs, is to be share and share alike divided be-
tween my half-brothers and half-sisters." This is apparently
not intended to apply tò the death of testator's children and
all their heirs during the lifetime of the testator. The
words, "and all children or heirs being their descendants,"
forbid this interpretation, as also do the words "my children
and their children or heirs." Neither is it probable that the
testator intended thereby an indefinite failure of issue.

The construction given by the circuit court seems to us
the most reasonable and to accord best with the probable
intention of the testator. As we understand that construc-
tion, if there is at the time of the first distribution, to wit, at
the death of *Julia A. Crosby,* any child of the testator living
or any child or children of any child of the testator living,
the appellants receive nothing from the amount to be then
distributed; and if at the time of the second distribution,
three years after the death of *Julia A. Crosby,* there is
any child of the testator living or any child or children of
any deceased child of the testator living, appellants take
nothing out of this final or residuary distribution or out
of any property of the testator except the five shares of the
stock of the First National Bank of Racine. But if at the
time of the first distribution there is no child of the tes-
tator or issue of any such child deceased living, the appel-
lants take as provided in the will, and in case they do not
at that time take because of the existence of some child of
the testator or issue of such child deceased, they will take
under the will at the time of the second distribution if at
that time there is no child of the testator or issue of any such
deceased child living.

*By the Court.*—Judgment of the circuit court is affirmed.