WILL OF OWENS: CARROLL, Administrator, Appellant.

*October 24—November 14, 1916.*

*Wills: Construction: Share of "deceased child:" "Revert:" Vesting of
estates.*

1.  The paramount rule in construing a will is that the intention of
    the testator should prevail so far as that can be read out of the
    language used to express it.
2.  When the death of a member of a class to which property is di-
    rectly devised is mentioned in a will as a contingency on the
    happening of which the other members are to take the share in-
    tended for the deceased, a death precedent to that of the testator
    will be presumed to have been intended, if nothing to the con-
    trary clearly appears by the will.
3.  Thus, where a testatrix devised all of her property directly to her
    children "in equal parts, share and share alike, the issue surviv-
    ing any deceased child to take by right of representation, and
    the share of any deceased child leaving no issue to revert to my
    other children in equal parts," she intended that the share of
    any child predeceasing her should go to the other children, and
    that those children living at the time of her death should take
    an absolute vested title in her property. *Will of Harrington,*
    142 Wis. 447, and *Eggleston v. Swartz,* 145 Wis. 106, distin-
    guished.
4.  The word "revert" as used in such will means merely "go to."
5.  The law favors the early vesting of estates and, in case of uncer-
    tainty respecting the purpose intended to be expressed by a tes-
    tator, a construction which will accomplish that result is to be
    preferred to one which will not.

APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge.     *Reversed.*

Action for construction of the will of Mary Elizabeth Owens, deceased.

The will was dated April 7, 1912. The testatrix died a few months thereafter. The will was duly established in the probate court for Milwaukee county, December 31, 1912. All the children of the testatrix survived her. There was a daughter, Margaret H. Carroll, wife of *Ellis F. Carroll.* She died March 1, 1913, and *Mr. Carroll* was, in due course, appointed administrator of her estate.

The following portions of the will are all which need be examined:

"Fourth. I direct, authorize and empower my executors hereinafter named as soon as possible after my death to sell and convert into cash all my real estate at such price and upon such terms as they may deem adequate and advantageous, and to that end give and grant them full power and authority to sell and convey such real estate without leave or authority from any court therefor.

"Fifth. Subject to the sale thereof by my executors as hereinbefore directed, I give, devise and bequeath unto my daughter Margaret Hannah Carroll the use, profit and income of my real estate during the first year next ensuing after my death, she, however, to defray all necessary repairs and fire insurance premiums, any and all taxes, general or special, levied or assessed thereon after the first day of January next preceding the date of my death and all interest upon outstanding incumbrances or mortgages; her said beneficial interest in my real estate to cease should my executors sell said real estate before the expiration of said year, in which latter event interest on incumbrance and taxes shall be prorated by my executors, my intention being that the proportionate part of taxes and interest to be allowed to my said daughter for that part or portion of the year after my death that may not have expired at the time of such sale.

"Sixth. Subject to the foregoing provisions, devises and bequests, I give, devise and bequeath all my property and estate (including the net proceeds, be my real estate sold and conveyed by my executors) unto my six (6) children: James

Owens, William Owens, Robert Owens, Elizabeth Mead, *née* Owens, Joseph D. Owens, and Margaret Hannah Carroll, *née* Owens, in equal parts, share and share alike, the issue surviving any deceased child to take by right of representation, and the share of any deceased child leaving no issue to revert to my other children in equal parts, share and share alike, subject, however, to the following condition and provision, to wit: The sum of two hundred and fifty ($250) dollars shall be deducted from the distributive share of my daughter Elizabeth Mead (or if deceased, her issue) and shall be added to the distributive share of my son Joseph D. Owens (or if deceased, his issue), the indebtedness from me to my son Joseph D. Owens and the indebtedness from daughter Elizabeth Mead to me, both in said amount, to be thereby extinguished."

In appropriate proceedings in the probate court, the executors of the will contended that the death referred to therein is one occurring before the time for distribution, hence that *Mr. Carroll* as sole heir of his wife and her personal representative was not entitled to any interest in the estate. He contended that the death referred to is one occurring during the life of the testatrix. He prevailed and the executors appealed to the circuit court, where the decision was reversed, it being held that the death intended by the testatrix was one occurring before distribution of the estate and therefore that, upon the death of Margaret, the share intended for her, conditioned upon her surviving until such time, belonged to the other children of the testatrix.

For the appellant there was a brief by *Flanders, Bottum, Fawsett & Bottum,* attorneys, and *James H. McGillan,* of counsel, and oral argument by *F. L. McNamara.*

*Adolph G. Schwefel,* attorney for the executors, and *Andrew J. Clarke,* attorney for Owen heirs, for the respondents.

MARSHALL, J.    What did the testatrix mean by the words, "the share of any deceased child leaving no issue to revert to my other children in equal parts, share and share alike"? That is the sole question to be determined. As above indi-

cated, the trial court reached the conclusion that she meant, the share of any child deceasing at any time before final distribution of the estate, should go to the other children, while appellant contends she meant, any child predeceasing her should so go.

The language under consideration is not altogether free from ambiguity. Therefore we must apply thereto settled rules for judicial construction.

Superior to all other rules for construing wills is the one that the intention of the testator should prevail so far as that can be read out of the language used to express it. *Will of Ehlers,* 155 Wis. 46, 48, 143 N. W. 1050. Passing that, there is no rule more familiar than that, in the absence of words showing a contrary intention, the death of a child, in a will where the bequest or devise is, in terms, to such child direct, with a provision, in case of the decease of such child, for the bounty to go to some other person or persons, refers to a death occurring during the lifetime of the testator. *Patton v. Ludington,* 103 Wis. 629, 640, 79 N. W. 1073. True, as indicated by the very language of the rule, and by many adjudications, such as *Miller v. Payne,* 150 Wis. 354, 374, 136 N. W. 811; *Chesterfield v. Hoskin,* 133 Wis. 368, 374, 113 N. W. 647, the death mentioned may refer to one subsequent to that of the testator; but the presumption is otherwise and will prevail in the absence of some pretty clear indication to the contrary found in the language of the will. In case of there being such, the presumption is thereby effectually displaced as indicated in *Korn v. Friz,* 128 Wis. 428, 107 N. W. 659, and similar cases.

The court below seems to have been guided, in the main, by *Will of Harrington,* 142 Wis. 447, 460, 125 N. W. 986. It should be observed that the rule under discussion was there held not to apply for many reasons which do not characterize this case. Among such reasons were these: 1st, there was a precedent life estate; 2d, the estate devised to the children

was a life estate only; 3d, the beneficial interest was not to take effect so long as there was either a child or a grandchild of the testator living; 4th, it would result in want of harmony between the particular and other portions of the will. A careful reading of the case will show that it affords little or no assistance in discovering what the language in question was purposed to express.

Counsel for respondents rely upon *Eggleston v. Swartz,* 145 Wis. 106, 129 N. W. 48; but it seems the circumstances were quite different from those here.    There was a precedent life estate.    The devise over to the members of the class was not absolute; it was of a condition fee, and plainly such, as it was provided that, in case of the death of a member of the class, the share going to that one should go in fee to the then living children of such one, in case of there being any, otherwise, in fee, to the other members of the class.    Thus the time of vesting in fee, absolute, as to the share devised to any member of the class, was expressly postponed until the death of such member, showing that death at any time was what the testator had in mind.    There is nothing of that sort in the case before us.    Here there was neither a precedent life estate, nor conditional fees created for the members of the testator's class.    The mere use of the property by Margaret during the period allowed for administration, instead of the personal representative having that use, subject to the right of such representative to sell the property for the benefit of those to whom the same was directly given, does not answer to the call for a precedent estate displacing or tending to displace the presumption that the death of a member of a class to which property is directly devised when such an event is mentioned in a will as a contingency entitling the other members to take the share intended for the former, nothing appearing by the will, clearly, to the contrary, is a death precedent to that of the testator.

This other rule is an important guide in such circumstances as we have here.    The law favors the early vesting of

estates and, in case of uncertainty respecting the purpose intended to be expressed by a testator, a construction which will accomplish that result is to be preferred to one which will not. *Moran's Will,* 118 Wis. 177, 196, 96 N. W. 367. Here it should be observed, as before indicated, that there is no precedent life estate and that the gift was direct. The latter feature is an important circumstance. In view thereof, and the rules referred to, we should be able to discover some quite unmistakable indication that the testatrix did not intend that her children, living at the time of her death, should take an absolute vested title to her property.

The trial court concluded that the word "revert" was not used in the will in the technical sense of "return" or "go back" because no such movement could occur without a precedent going from the source to which the return would take place. Evidently the testatrix did not intend that in case of a child being vested with title and possession of a share of her property, such share should, upon the death of such child, be divested for the benefit of her other children. So it must be that the word "revert" was used in the sense of "go to." The term has been given that meaning in cases where necessary to effect a testator's intention. *Beatty v. Trustees, etc.* 39 N. J. Eq. 452, 463; *Estate of Bennett,* 134 Cal. 320, 66 Pac. 370; *Johnson v. Askey,* 190 Ill. 58, 60 N. E. 76.

We reach the conclusion that the language under consideration must be read thus, "the share of any" child deceasing in my lifetime to go to "my other children." The word "revert" when given the meaning of "go to" pretty clearly indicates a going direct from the testator to the contingent beneficiaries, not from the deceased child, so that the death spoken of is one occurring before that of the testator. Such meaning makes harmony between all parts of the will and is consistent with all rules for judicial construction applicable to the matter.

Further discussion would not add anything of value to what has been said. We have been unable to discover any-

thing in the will displacing the presumption of intention from the language "the share of any deceased child . . . to revert to [go to] my other children" that a predeceasing of the testator was what she had in mind.

The result is that the judgment of the circuit court must be reversed and the cause remanded with directions to render judgment in accordance with this opinion and affirming the judgment of the county court. .

*By the Court.*—So ordered.

ESCHWEILER, J., took no part.