WILL OF SAUER: SAUER and others, Appellants, vs. SAUER, Executor, and others, Respondents.

*November 9—December 7, 1937.*

For the appellants there were briefs by *Pellette & Zillmer* of Milwaukee, and oral argument by *Raymond T. Zillmer*.

For the respondents there was a brief by *Ludwig & Ludwig* of Milwaukee, attorneys for Frederick A. Sauer, Elizabeth J. Sauer, and Stuart Sauer Wright, and *Maurice A. McCabe* of Milwaukee, guardian *ad litem* for Janet Wallace, Thomas Wallace, and James Junior Wright, and oral argument by *Carl J. Ludwig*.

FAIRCHILD, J.   The petitioner, respondent on this appeal, and the appellants are primarily concerned about the kind of estate in the $85,000 fund given to the daughters of the testator.   The arrangement made in the codicil is of course to be particularly noted.   We are to look there first in the search for the testator's intention in disposing of his property among the beneficiaries.   If he has there stated his purpose, the courts cannot change his plan.   In considering questions of this nature we apply rules of construction which have grown out of analogies with statutes, public policy, and rules growing out of the experience of men with respect to

the early vesting of estates and the favoring of absolute over defeasible ones. The language of the codicil read in the light of these guiding rules for construing wills brings out clearly a purpose on the part of the testator to provide for the use and enjoyment of his wife the income from a fund of $85,000, and then that the fund descend to his daughters, share and share alike. The fund is to be divided, not the income—when the share of one of the daughters is paid to her the control over the property is in her and is complete. No words at all certain or tending to express an intention of creating a life estate in the daughters occur in the codicil. The testator limits the wife's taking to a life estate, but does not make use of any words so to limit that which is bequeathed to his daughters. Nor does it appear from the provision made by him in the codicil for substitutionary bequests in the event of the death of either or all of the daughters that he intended to limit the daughters' estates to estates for life.

Respondents' argument is based on the contention that when the testator used the word "deceased" he meant "when deceased" rather than "if deceased." A mere reading of the codicil leaves the impression that the latter is the more natural meaning, and the meaning, "if deceased at the testator's death," is favored under the rules of construction.

When difficulty attends upon the interpretation of language used in instruments of this character, unless words of the testator indicate a different meaning, the rules referred to will control the construction when the court is appealed to. When, under those rules, the phrases employed become plain and unambiguous, their meaning must prevail, and there is no occasion to resort to surrounding circumstances merely because the meaning is challenged. If we assume in examining this codicil that the testator meant to express his intent in words of accepted meaning, it will readily appear that he gave a life estate to one beneficiary, with a remainder in fee, or absolute estate, to each of three daughters if living, and if

any one of them predeceased him, that particular estate was to go to the named substitute.

"Where there is a devise to one person in fee, and, in case of his death without issue, to another, the death referred to is death during the lifetime of the testator, unless there is language in the will which gives fair, clear, and reasonable ground for saying that the testator had a different intention." *Lovass v. Olson,* 92 Wis. 616, 619, 67 N. W. 605.

This has been so frequently declared to be the rule, and with so few exceptions to it in a long line of decisions, that it is well-settled and controlling law. The cases dealing with this subject quite generally hold that—

"as indicated by the very language of the rule, and by many adjudications, such as *Miller v. Payne,* 150 Wis. 354, 374, 136 N. W. 811; *Chesterfield v. Hoskin,* 133 Wis. 368, 374, 113 N. W. 647, the death mentioned may refer to one subsequent to that of the testator, but the presumption is otherwise and will prevail in the absence of some pretty clear indication to the contrary found in the language of the will." *Will of Owens,* 164 Wis. 260, 263, 159 N. W. 906, 907.

There are cases where the terms used by a testator are so similar to those employed in this case that they may be considered as controlling precedents. In *Will of Inbusch,* 193 Wis. 10, 212 N. W. 634, the will devised one share of the residue to the husband of testatrix for life, and upon his death, the principal was devised to the three sons of testatrix, "equally share and share alike, and in the event of the death of either of them then to his heirs." One son died before the death of his father, the life tenant. It was held that the gift to the sons vested at the death of testatrix. In *Will of Caldwell,* 205 Wis. 587, 238 N. W. 367, the will devised to three children, Harriet, Beatrice, and James, the residue, share and share alike, except that in case James should die without issue, then his wife should have the use of his share as long as she remained single. There it was held that James, hav-

ing survived the testatrix, had an estate in fee simple. In addition to these cases which we deem in point, there are cases in other jurisdictions which may be found referred to in *Atchison v. Francis,* 182 Iowa, 37, 165 N. W. 587. In that case, there was construed the following language:

"Six. I will, desire and direct that at the death of my beloved wife the residue of my estate, both real and personal, be sold and that the proceeds thereof be disposed of as follows: I direct that out of said proceeds there shall be paid to my grandson, Alva Fall, the sum of one hundred dollars and that the remainder of said proceeds after paying the said sum of one hundred dollars be equally divided between my beloved daughters Mary L. Patterson, Lodema S. Atchison and Eva E. Horn, share and share alike, and in case of the death of each or any of said children aforesaid, said individual share to be paid to the lawful heirs of their body begotten."

The interests of the three daughters were there held to be remainders in fee simple vested at the death of the testator.

The existence of an harmonious family relationship and the custom of the testator in making gifts to treat all concerned on a basis of equality, the condition of the estate, and other matters tending to show the basis of the testator's concern for those for whom he was providing, were stipulated to such an extent that there is no dispute over the facts. Some point is made in the argument of the respondents that the method followed in the codicil is not in accordance with a custom long followed by the testator in the matter of making equal gifts. Were it necessary to resort to surrounding circumstances, the facts stipulated would not require a change in the construction here set forth. We find nothing inconsistent with the meaning to give to each daughter an absolute estate in one third of the certain fund; to have it vest at the time of his death, postponing the enjoyment only until the passing of the intervening life estate.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.

FOWLER, J. (*dissenting*). I cannot agree to the disposition of this case made by the court. To my mind the intent of the testator is plainly expressed in the codicil. The court ignores the fact that the original will had given the unmarried daughters an interest in the fund covered by the codicil. By his will as originally drawn the testator had given his wife a life estate in a fund of $85,000 and an absolute estate in the remainder to his children living at the wife's death. His children consisted of a son and three daughters. By the codicil he intended to make some change in the disposition of this fund. What the court must do is to determine what change he intended besides the manifest intent to cut his son off from a share in the fund. The circumstances show plainly an intent in another respect. One of his daughters was married and had two children. Each of the other two was unmarried and beyond childbearing age. Under his will, as first drawn, each of these daughters might by her will dispose of her share in the fund as she might wish, or otherwise deal with it as she might wish. The testator did not want these daughters to have this power of disposition. He wanted their shares to go upon their deaths to his four grandchildren, the two children of his married daughter and two children of his son. In his codicil he provided that his wishes in that regard should prevail, not the wishes of his unmarried daughters, whatever their wishes might be. By his codicil he left the share of his married daughter to go to her children as he had first provided in his will, but provided that the share of each of his unmarried daughters should go to his four grandchildren. The result of the codicil is that each of the unmarried daughters took a life estate in one third of the fund after the death of the widow, and the four grandchildren took the remainder. The county court so held in effect, and its judgment should be affirmed.

The opinion of the court refers to rules of construction in general without referring to any in particular, so I do not

know what rules of construction the court had in mind. But whatever, if any, the court had in mind, rules of construction are applied to aid in determining the testator's intent, not for circumventing his intent when it appears without their aid. Intent here appears without the aid of rules of construction, and such rules are beside the case, except as they may tend to show whether the estate of the grandchildren in remainder vested at the testator's death or its vesting is postponed to the death of the unmarried daughters. Whether the estate of these daughters vested at the testator's death or the death of the widow is immaterial, as their estates and the consequences of their vesting in them is the same in either case. But if the grandchildren's estate in remainder vested at the time of the testator's death the share of a grandchild who should die before the death of one of the unmarried daughters would go to his heirs. While if the vesting of a grandchild's estate in the remainder is postponed until the death of an unmarried daughter, the share of a grandchild who should die before such daughter would go to the grandchildren who were living at the time of the daughter's death, if the ruling of *In re Moran's Will,* 118 Wis. 177, 96 N. W. 367, were followed. I think the estate of the grandchildren vested at the testator's death, and the county court so held.

I am authorized to state that Mr. Chief Justice ROSENBERRY concurs in this dissent.