Egan and another, Respondents, vs. Sells, imp., Appellant.

*November 13—December 9, 1930.*

120

122

For the appellant Isabelle Siegel Sells there were briefs by *Bouck, Hilton, Kluwin & Dempsey* and *Henry Hughes,* all of Oshkosh, and oral argument by *Mr. Hughes.*

*Wm. J. Butler* of New London, for the respondents.

ROSENBERRY, C. J.  It is the contention of the defendant Isabelle Sells that the will of her father, Henry Siegel, by necessary implication, charged the payment of the $500 legacy given to her by the will upon the real estate in question.  The trial court was of the view that the provision of the will requiring Guy R. Siegel as trustee to give a bond for the faithful performance of the trust repelled this inference.  If the will had been fully executed and the bond had been given and approved by the court, an entirely different situation would be presented.  Here the will was not fully executed, the bond was never given nor the legacy paid.  It is undisputed that the plaintiffs as well as the other parties claiming under Guy R. Siegel had actual or at least constructive notice of the rights of Isabelle Sells, whatever they may be.

It is apparent from a consideration of the language of the will that it does not specifically create a lien upon the real property in question as security for the payment of the $500 legacy.  The situation is this: the estate was com-

posed of the real property in question and personal property of the value of $500. All of the personal estate and more was expended in paying the expenses of testator's last illness, funeral expenses, and expenses of administration. If payment was to be made, therefore, from the estate of the testator, it must be made from the real property. Considering the situation of his estate at the time of his death, the testator must have contemplated that the $500 would be derived by his son out of the real property devised to him. To Guy Siegel he devises "all the rest, remainder of my property real and personal." The rest and remainder of his property was that which remained after payment of his debts, expenses of last sickness, funeral expenses and expenses of administration, and $500 to the daughter Isabelle. In addition to paying the sum of $500 to her, Guy Siegel, who was also the executor of the will and was to be trustee of the legacy, was required to give bonds for the faithful performance of the trust. This, as already pointed out, he never did. That an equitable lien arises upon the devise of real estate made subject to the payment of debts and legacies or of specific debts or charges, though such legacies, debts, and charges be not in express terms made a charge upon the land devised, is established by a long line of decisions. 6 Thompson, Real Prop. p. 79, § 4915, and cases cited.

The last clause of sec. 313.26, Stats., was enacted no doubt for the express purpose of repelling the inference which necessarily arises from the direction to pay debts and specific legacies and a gift over of the residue. That section provides: "But no general direction in any will to pay the debts of the testator out of his property shall subject the homestead to the payment thereof,"—the inference clearly being that without the statute the effect of language such as used in this will would be to charge the homestead as well as all other property passing to the residuary legatees with the payment of the testator's debts. For an enlighten-

ing discussion of this subject see 3 Pomeroy, Eq. Jur. p. 2988, § 1247, discussion and cases there cited. Mr. Pomeroy says:

"The intention of a testator to charge debts and legacies upon the real estate devised may also be implied from the general dispositions of the will—from the mode in which the real and the personal property are donated. The English and the American decisions all recognize this fact, but they are not all agreed upon the effects produced by particular dispositions. In England, a number of general rules on this subject have been definitely settled as a part of the law concerning property. These rules are based upon three main considerations or motives of interpretation: 1. That a gift of personal property, in terms, *after* the payment of debts or legacies indicates that the debts or legacies are to be paid out of the real as well as the personal estate; 2. That a direction in any form *to a devisee* to pay debts or legacies indicates an intention that the payment must or may be made out of the real estate devised to him; and 3. That a gift of legacies or a direction to pay debts, followed by a gift *of the residue* of the real and personal estate, indicates an intention that the former are to be paid out of the testator's real as well as his personal estate, *since otherwise there could not be any residue of the real estate.* These general canons of interpretation, and the several rules based upon them, as formulated in the foot-note, have not been fully adopted and acted upon by the courts of the American states. The doctrine that a devise to the executors or to third persons, accompanied by a direction to pay debts or legacies, and that a devise, substantially, in terms, 'after payment of debts or legacies,' indicate an intention of the testator to charge the lands so devised, has been generally adopted and acted upon in this country, although not without modification and even exception in a few of the states."

See 42 A. L. R. 654, where the cases are collected, analyzed, and classified in an exhaustive and critical note. The annotator says:

"The general rule is well settled that where a testator, after bequeathing pecuniary legacies, gives the residue and

remainder of his real and personal estate (or uses similar terms indicative of a gift of a mixed residue), the legacies are a charge on or are payable out of the residuary real estate, and, in case of a deficiency of personalty, must be paid out of the realty otherwise passing under the residuary clause."

In *Will of Root,* 81 Wis. 263, 51 N. W. 435, the residuary clause of the will provided:

"After the sale of said farm and the payment of said debts, legacies, bequests, and devises as aforesaid, the rest, residue, and remainder of my property shall go to my wife for life, remainder over to my heirs at law."

The personal estate was insufficient to pay the general legacies. It was held that the payment thereof was charged by the will upon the reversion or remainder in the realty after the termination of the widow's life estate and that the interest of the reversioners might be sold to pay the legacy.

In *Hamilton v. Buckman,* 118 Wis. 169, 95 N. W. 128, by the residuary clause of his will the testator gave to his two sons "All my real estate and personal effects after the death of my said wife, with the exception of the above-named bequests," which bequests exceeded by the sum of $2,000 the total personal estate. The sons to whom was left the residuum were appointed executors and absolved from giving bond. The trial court held that a finding that the testator intended to charge the pecuniary legacies upon the mixed residuary fund of both personalty and realty was sustained by the evidence and that the rights of the specific legatees were prior to the residuary legatees or any person holding under them.

In *Kuener v. Prohl,* 119 Wis. 487, 97 N. W. 201, the will of the testator provided that his household goods and $1,000 should go to one of his two sons and directed the rest of his property, real and personal, be divided equally between them. It was held that the legacy of $1,000 was

a charge upon all the testator's estate, including, if necessary, his homestead, and that a mortgage given by the other son on his interest in the homestead covered only one half of the proceeds thereof remaining after payment of said legacy.

In *Will of Korn: Korn v. Friz,* 128 Wis. 428, 107 N. W. 659, the will of the testator provided that the widow should have a life estate in all of his lands, and after her death he gave his farm to a son upon the express condition that he pay to the daughter of the testator $5,000 within one year after the death of the widow. It was held that this provision of the will did not make the son's estate in the farm an estate upon condition; but it gave to the daughter the right to a lien or charge for that amount upon the whole title to the farm, which she could enforce or transfer to any one other than the son.

In *Steele v. Korn,* 137 Wis. 51, 118 N. W. 207, 120 N. W. 261, which involved the same will as was involved in *Korn v. Friz, supra,* it was held that where a devisee of lands accepts the devise and takes possession thereof under such devise, he becomes personally liable to pay a legacy charged thereon when it becomes payable by law, and that the situation of the devisee, then, is that of owner of the property subject to a lien thereon, which he had agreed to pay, and which may be foreclosed and enforced at any time after it falls due.

It is considered that the will of Henry Siegel in this case, giving as it did to his son Guy Siegel the residue of his estate, real and personal, after the payment of the legacy, by necessary implication made the legacy a charge upon the real estate unless the will by its terms negatives such an inference. Plaintiffs point to the fact that the real estate was given to Guy absolutely as such a circumstance. Manifestly the term "absolutely" is used merely as a substitute for "in fee simple" or "to have and to hold forever" and

relates to the quality of the estate which he was to take under the will.

It is also urged that the fact that by the terms of the will Guy Siegel as trustee was required to give a bond for the faithful execution of the trust is inconsistent with a finding that the testator intended to make the legacy and charge his real property. If the will had said nothing as to the manner in which the trust was to be executed or the legacy paid, payment in cash would have discharged the property from any possible lien. The fact that instead of paying it in cash the executor was to pay it at the rate of $100 per year and give a bond for the execution of the trust, merely specifies a method by which the devisee's liability under the will might be discharged and the real property relieved from the lien. The will in this case is not a very lawyerlike document. It cannot be helped out by the testimony of the scrivener who drew it as to what the testator intended. His intention must be derived from the language of the instrument and the attendant circumstances. As is said over and over again in the cases, the mingling together in the residuary clause of real and personal property is an indication that the testator intended that the residuary legatee should take that which was left after specific legacies and bequests had been paid. It has been so held by nearly every court which has considered the subject because, as is said, that is what makes up the residue.

A contention is made on behalf of the plaintiffs that Isabelle Sells is estopped from claiming the legacy as against the subsequent incumbrancers. It appears without dispute that they were charged with notice of the state of the title and of the fact that the legacy had not been paid, and it nowhere appears that they did anything or refrained from anything they would have done in relation to the statement by Guy Siegel that he had paid his sister, and, if they had relied upon his statement, could not have estopped her un-

less made with her knowledge and approval.  No such evidence appears in the case.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded with directions to enter judgment establishing the right of Isabelle Sells to a prior lien upon the premises in the amount of the legacy.